WILLIAM FITZGERALD, an Infant, by his Guardian, *vs.* ST. PAUL, MINNEAPÓLIS & MANITOBA RAILWAY COMPANY.

August 3, 1882.

**Contributory Negligence of Parent imputed to Infant.**—1. The negligence of a parent having the care of an infant child *non sui juris*, which contributes, with the negligence of a third person, to produce injury to the child, bars a recovery by the latter. The negligence of the parent is in the law to be imputed to the infant.

**Conflicting and Uncertain Instruction to Jury.**—2. The court, laying down the above proposition to the jury as a rule of law to be applied by them, (because such proposition had been agreed to by both parties to the action,) accompanied its instructions with statements to the effect that, in the opinion of the court, the law was really otherwise, and that the proposition charged was perhaps opposed to the weight of reason and of authority. *Held* to be error.

**Railroads—Fences—Construction of Statute.**—3. The statutes of 1876 and 1877, requiring railroad companies to fence their roads, and making them liable for damages sustained in consequence of neglect to do so, *held* inapplicable to the case of an infant straying on an unfenced railroad track.

Appeal by defendant from an order of the district court for Clay county, *Stearns*, J., presiding, refusing a new trial. The case is stated in the opinion.

*R. B. Galusha, C. E. Flandrau* and *J. Kling*, for appellant.

*Wilson & Ball*, for respondent.

The liability of a railroad company for damages, by reason of a failure to fence its road, is not limited to domestic animals. *Fleming* v. *St. Paul & Duluth R. Co.*, 27 Minn. 111; *Schmidt* v. *Mil. & St. P.*

*Ry. Co.;* 23 Wis. 186; *Gillam* v. *Sioux City & St. P. R. Co.,* 26 Minn. 268; *Davis* v. *Burlington & Mo. R. Co.,* 26 Iowa, 549.

DICKINSON, J. Action to recover for injuries sustained by the plaintiff from being run over by a freight train of the defendant. At the time of the injury the plaintiff, who was then 18 months old, had wandered from his father's house and upon the railway track unobserved by his father, in whose care the child then was. The defendant is charged with negligence, both in the operating of the train, and in not having fenced its track at the place of the accident. The defendant, denying its own negligence, alleges that the accident was caused by the negligence of the father of the plaintiff in suffering the child to be upon the track. The negligence of the father in the care of his child, as is claimed by the defendant, must be imputed to the latter, and, if found as a fact, bar a recovery. Upon the trial there was evidence tending to show both negligence on the part of the defendant in the management of the train, and on the part of the father of the plaintiff in the care of the child. No fence had been built along the line of road at the point where the child went on the track. This was on the opposite side of the track from the railway station-house and platform at Glyndon. The necessity, if any existed, for leaving that side of the road unfenced does not appear.

It appears that upon the trial of the case the attorneys for the respective parties agreed that the law imputed the negligence of a parent to the child, and that an infant, suing to recover for the negligence of another, would be barred of a recovery by any negligence of the parent contributing to bring about the injury complained of. The court in its charge instructed the jury fully that they were to accept and act upon this principle as applicable to this case, but, in connection with its instructions in this regard, the court said to the jury in substance that there was ground for a difference of opinion upon this question; that courts differed upon it, and that perhaps the weight of authority and of reason was opposed to the proposition charged, and that he (the court) did not believe it to be the law; and that he thought that if he had cause to decide upon it, he should decide the other way; that he did not believe the negligence of the

v.29—22

parents could be imputed to the child, but that he charged it to be the law because it was agreed upon by doth parties, and neither he nor the jury had a right to disregard it. Upon defendant's exceptions the propriety of this part of the charge is brought in question.

The court was not required to accept the propositions of law agreed upon by counsel, nor to conduct the trial upon a theory of the law not entertained as correct by the court itself. On the contrary, it was the duty of the judge to apply and administer the law according to his own understanding of it. Assuming the doctrine of the imputability of the negligence of the parent to the child in this case to be legally correct, the court ought not to have added to its charge to that effect statements that the weight of reason and of authority were perhaps opposed to the rule indicated, and that, in the opinion of the court, the law was otherwise. See *Town of Scott* v. *Town of Clayton*, 54 Wis. 499, which fully sustains our opinion in this case. In no case could there be assurance that the jury would follow and apply the rule by which they were thus instructed to be guided, rather than the opposite one, which was indicated by the court as being the true rule of law, in its opinion, and more consistent with reason and authority; and especially in a case like the present, which was of a character calculated in an unusual degree to move the sympathy of the jury in favor of the plaintiff, is it to be apprehended that the jury may have suffered themselves to entertain and apply, in favor of the infant plaintiff, as a rule of law, a principle sanctioned by the expressed opinion of the court itself, rather than one which, if the father should be deemed to have been negligent, would bar a recovery, and of which the court expressed its disapproval.

The question involved in this case, as to the contributory negligence of the parent or person standing *in loco parentis* barring a recovery by an infant for the negligence of another, is one upon which there is a decided conflict of authority. It has been so fully considered by both courts and commentators that there is little reason to further discuss it. The majority of the court adopt, as sounder in principle and more equitable in practice, the doctrine of those cases which hold that the consequences of negligence on the part of the

parent or other person rightfully having charge or control of an infant *non sui juris*, and himself incapable of negligence, is imputable to the infant; that the infant being *non sui juris*, and having in law a keeper, to whose discretion in the care of his person he is confided, the negligence of such custodian must, as regards third persons, be held in law the negligence of the infant.   Among the authorities declaring the law to be as thus expressed are the following: *Hatfield* v. *Roper*, 21 Wend. 615; *Mangam* v. *Brooklyn R. Co.*, 38 N. Y. 455; *Wright* v. *Malden & M. R. Co.*, 4 Allen, 283; *Callahan* v. *Bean*, 9 Allen, 401; *Holly* v. *Boston Gas Light Co.*, 8 Gray, 123; *Brown* v. *European & N. A. Ry. Co.*, 58 Me. 384; *Lafayette & I. R. Co.* v. *Huffman*, 28 Ind. 287; *Toledo, W. & W. Ry. Co.* v. *Grable*, 88 Ill. 441; *Meeks* v. *Southern Pac. R. Co.*, 52 Cal. 602.   It follows that a new trial must be awarded for the reason above indicated.

Upon the trial the court charged, in effect, that a breach by defendant of the statutory duty to fence the line of its road was negligence, which, if it contributed to cause the accident complained of, would be such negligence as would give a right of recovery in this action.   For the purpose of our consideration of this question, it may properly be assumed that the reasonable and proper use of the railroad at this point, and the circumstances, were such as did not render it impracticable to fence the road on the side opposite to the depot.

By the statute of 1876, (Laws 1876, c. 24, § 1,) all railroad companies were required, within six months after such enactment, to build good and sufficient cattle-guards at all wagon crossings, and good and substantial fences on each side of their roads.   Section 2 of the same act provides that all railroad companies shall be liable for domestic animals killed or injured by the negligence of such companies, and that a failure to build and maintain such required cattle-guards and fences shall be deemed an act of negligence.   By the terms of section 3, a neglect for a period named to pay the damages occasioned by such killing of or injury to domestic animals makes the railroad company liable to extra costs in case of a recovery by action.   Section 4, as amended in 1877, (Laws 1877, c. 73; Gen. St. 1878, c. 34, § 57,) is as follows: "Any company or corporation operating a line of railroad in this state, and which company or cor-

poration has failed or neglected to fence said road, and to erect crossings and cattle-guards, and maintain such fences, crossings, and cattle-guards, shall hereafter be liable for all damages sustained by any person in consequence of such failure or neglect." By another act passed in 1877, (Laws 1877, c. 107; Gen. St. 1878, c. 18, § 2,) a fence consisting of four smooth wires, the lower one of which is not less than 16 nor more than 20 inches from the ground, is such a fence as answers the requirement of any statute in respect to fencing, except as to partition fences. Considering the terms of these statutes, and the character of fence which may be erected in compliance with the statutory requirement, it is the opinion of a majority of the court that the intention of the legislature was, by imposing the duty named in the statutes, to prevent domestic animals coming upon railroad tracks, with the consequent danger to the animals themselves, and to passengers and employes upon railroad trains; that the statute imposes no duty to fence as respects children, and the statutory requirement has no application to a case like the one now before us. Assuming the object of the statute to be as above indicated, this conclusion is supported by the decision in *Gorris* v. *Scott*, L. R. 9 Exch. 125. This was an action to recover from a ship-owner for sheep washed overboard on a sea voyage by reason of the neglect of the defendant to comply with certain orders of the privy council, made pursuant to parliamentary authority, respecting the manner of disposing of domestic animals on shipboard; the object of such requirements being to prevent unnecessary suffering to the animals, and to prevent the communicating of diseases among them. The injury complained of being deemed by the court foreign to the object of the legislative orders referred to, a recovery was denied. See, also, *Hall* v. *Brown*, 54 N. H. 495, and *Metallic Compression Casting Co.* v. *Fitchburg R. Co.*, 109 Mass. 277. The charge of the court in the respect referred to must be regarded as erroneous.

Order reversed, and a new trial ordered.

GILFILLAN, C. J. I concur with the foregoing opinion as to the first point discussed. As to the second point, I am of opinion that the duty to fence created by the statute is absolute; that the statute

is (as stated in *Gillam* v. *Sioux City & St. Paul R. Co.*, 26 Minn. 268,) a police regulation, designed for the protection of all; and that any person sustaining damage in consequence of a violation by the company of the regulation may recover. It is true that danger to others will more frequently arise from domestic animals straying upon the railroad track than in any other way; but I do not think the statute intends to provide only against dangers arising from that cause alone, but that the company neglecting to fence is "liable for all damages sustained by any person in consequence of such failure or neglect," whether such damages accrue from domestic animals straying on the track, or in some other way.