GEORGE WILLIAMS v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 26, 1897.

Nos. 10,373—(265).

### Personal Injury—Evidence—Manifestations of Pain.

Whenever bodily suffering is material to be proved, expressions or complaints, made at the time, which are the natural and instinctive manfestations of pain and suffering, are competent evidence as part of the res gestæ, and may be testified to and described by any person in whose presence they were uttered. Distinction noted between such complaints and the mere narration of past symptoms or simple descriptive statements, which furnish no evidence of the existence of suffering except the assertion of the party.

### Same—Statements to Physician.

Former decisions of this court on the question when the statements and representations of a sick person to his medical attendant, for the purposes of treatment, as to the nature, symptoms, and effects of his injury or malady, are admissible as original evidence in his own favor, considered and construed as not going further than to decide that they are admissible when they relate to existing pain or other symptoms from which the patient is suffering at the time. *Held* that, even if this rule should be adhered to, it should not be extended so as to apply to descriptions of past symptoms or to statements based on past experience.

### Same—Hearsay.

A statement by a party to his physician that he has lost his sexual powers is not admissible as original evidence in his own favor, being mere hearsay.

### Same—Cross-Examination.

On the cross-examination of a witness, testifying as an expert, counsel may be permitted, for the purpose of testing his skill and accuracy, to ask him hypothetical questions, pertinent to the inquiry, assuming facts having no foundation in the evidence.

Appeal by defendant from an order of the district court for Ramsey county, Otis, J., denying a motion for a new trial. Reversed.

*C. Wellington* and *M. D. Grover*, for appellant.

Before parties to actions were permitted to testify in their own

[1] Reported in 70 N. W. 860.

behalf evidence of complaints of pain or present suffering made to others was admitted on the ground of necessity. The person who was suffering could not testify as to his feelings and symptoms, and to exclude such evidence would have in effect prevented a fair presentation of the case to the court. It was the best evidence that could be produced under the rule then in force. It was, therefore, made an exception to the usual rule forbidding the proof of statments made to others out of court. The necessity for the existence of this rule has ceased. Firkins v. Chicago, 61 Minn. 31; Roche v. Brooklyn, 105 N. Y. 294; Kennedy v. Rochester, 130 N. Y. 654; Atlanta v. Walker, 93 Ga. 462. And it has been held that a declaration, after controversy has arisen, made at a medical examination then had for the purpose of preparing evidence, and not for medical treatment, is incompetent. Davidson v. Cornell, 132 N. Y. 236; Grand Rapids v. Huntley, 38 Mich. 537; Jones v. President, 88 Mich. 598. The case of Johnson v. Northern Pacific, 47 Minn. 430, does not militate against this rule.

*Briggs & Countryman*, for respondent.

Natural expressions of pain can be testified to by nonexpert witnesses. Johnson v. Northern Pacific, 47 Minn. 430. They are original evidence. Firkins v. Chicago, supra; Mayo v. Wright, 63 Mich. 32; Harris v. Detroit, 76 Mich. 229; Will v. Village (Mich.) 66 N. W. 60. The representations of a sick person of the nature, symptoms and effects of the malady under which he is laboring at the time are received as original evidence. Greenl. Ev. § 102; Brusch v. St. Paul, 52 Minn. 513; Cooper v. St. Paul, 54 Minn. 379. It is well settled that the declarations of a patient, as to his symptoms and complaints, to his physician, for the purpose of medical treatment and advice, are competent and admissible in evidence. Fay v. Harlan, 128 Mass. 244, Davidson v. Cornell, 132 N. Y. 236; Elliott v. Van Buren, 33 Mich. 49; Johnson v. McKee, 27 Mich. 47.

MITCHELL, J. The plaintiff brought this action to recover $50,-000 damages for personal injuries received on September 11, 1895, from a collision of two of defendant's trains, on one of which he was at the time employed as United States mail agent. The defendant admitted its liability in some amount, but joined issue as to the

amount of the damages which plaintiff was entitled to recover. This was the only issue in the case. The trial resulted in a verdict in favor of the plaintiff for $20,000. The record and assignments of error present but two questions: First, whether the court erred in admitting in evidence, in favor of the plaintiff, certain complaints and statements made by him to third parties, descriptive of his pain and suffering, and of the effect and symptoms of his injuries; second, whether the damages awarded were excessive.

1. After the accident, plaintiff was taken out of the wreck, and brought down to a hospital in St. Paul, where he remained for six weeks, when he was carried to his own house in the city. The case was tried in May, 1896. The plaintiff, as a witness on his own behalf, testified as to his injuries and their symptoms, but made no mention of any loss or impairment of his sexual functions. His wife, who was in attendance upon him both in the hospital and afterwards, was called as a witness in his behalf, and testified without objection to his condition and his complaints of pain and suffering while in the hospital. She was then asked, "What pains does Mr. Williams complain of and has he complained of since he left the hospital?" Counsel for defendant said, "I object to specific complaints made after Mr. Williams left the hospital as incompetent." The court overruled the objection, and the witness answered, "He complains of headache." Then followed these questions and answers, to which no further objection was interposed:

"Q. How long has he complained of headache? A. Well, he complained some when he first came out of the hospital. He complains more now than he did then. Q. How much more? A. Well, a great deal more. Q. What other complaints has he made? A. Complains that he is dizzy. He says his head swims."

Dr. Rutledge, a physician and surgeon of Grand Forks, was then called as a witness for the plaintiff, who testified, in substance, that he got here the next night after the accident and remained in almost constant attendance upon plaintiff at the hospital until September 20; that he had known him intimately since 1882; that he had been his physician and medical adviser almost ever since he had known him, whenever he was near enough to reach him. He then testified as to all the objective symptoms of plaintiff's injuries while he was

in attendance upon him. Whether the witness had treated the plaintiff after September 20 did not then appear. The examination of the witness by plaintiff's counsel then proceeded as follows:

"Q. During the time that you have been treating Mr. Williams since the accident, what complaints has he made to you? Mr. Wellington: Well, now this, of course, relates to expressions of pain incident to the injury. Q. What complaints of pain did Mr. Williams make to you? A. He has made the same complaints in regard to his head, in regard to his leg, and in regard to his lack of appetite and taste, that has been mentioned before. He has also complained of his loss—partial loss— of sexual functions, appetites; inability to perform sexual functions properly, satisfactorily. Mr. Wellington: I move to strike out that last answer, in regard to that portion of it, for the reason that there is no such issue made here, and irrelevant under the pleadings, and no complaint made by the plaintiff himself. The Court: What portion is it? Mr. Wellington: That portion in regard to the sexual functions, etc. The Court: Your objection is that it is not specially pleaded? Mr. Wellington: That it is irrelevant, that it is not specially pleaded, that the plaintiff has not testified anything in regard to that, and that it would be simply establishing it by a complaint made outside of court. The Court: I think I will let it stand. (Exception by defendant.)"

It subsequently appeared from the cross examination of this witness that he had not seen the plaintiff after September 20 until the following April, when he visited the witness in Grand Forks; and it does not appear whether or not he treated the plaintiff at that time. Hence, after what was developed by this cross-examination, it was at least left in doubt whether the complaints of plaintiff testified to by the witness were not made at the time of the visit to Grand Forks, in April, and as to whether they were made for the purpose of medical treatment or upon an examination by the doctor for the purpose of qualifying himself to give an expert opinion in the pending case. But the correctness of the ruling of the court must be determined by the state of the record as it stood at the time the ruling was made. Defendant's counsel made no further motion to strike out any part of the witness' testimony. The witness, after testifying to the objective symptoms of plaintiff's injuries as he observed them, and to the subjective symptoms as stated to him by the plaintiff, was dismissed, without giving, or being asked to give, any expert

opinion, based on these symptoms, as to the cause, nature, or permanency of plaintiff's injuries. All of the subjective symptoms testified to by the witness were the same, or of the same general nature, as those testified to by the plaintiff, except that of the impairment of his sexual functions.

Dr. Penny, of St. Paul, a physician and surgeon, was then called as a witness for the plaintiff. He had been treating the plaintiff as his medical attendant from the time of the injury down to the trial, and testified, without objection, not only to the objective symptoms of plaintiff's maladies, but also to the complaints of pain and suffering made to him by the plaintiff during the entire time of this treatment. All of these subjective symptoms were of the same general nature as those testified to by the plaintiff. The examination of the witness by plaintiff's counsel then proceeded as follows:

"Q. Doctor, what complaints has Mr. Williams made to you, in the course of your treatment of him, with reference to his sexual powers? Mr. Wellington: I think that was gone over once, wasn't it? I object to it anyway, as incompetent and irrelevant under the issues, for the reason that there is no direct evidence upon that subject. The Court: I thought he had been examined quite closely in regard to it. Mr. Briggs: It was Dr. Rutledge. Dr. Penny hasn't said anything about that; it was Dr. Rutledge. Mr. Wellington: I think that is right. The Court: Well, I am inclined to think it is proper to show what complaints the plaintiff made to his attending physicians of his condition and symptoms at that time, upon which the physician prescribed for him. I think I will allow the testimony. (Exception by defendant.) A. He claimed that they were entirely lost. Q. In what respect,—what manner? Mr. Wellington: Same objections to this question. (Objection overruled. Exception by defendant.) A. Inability to perform the act. Q. Any desire? A. Very little, if any. Mr. Wellington: Same objections."

2. The question as to the circumstances under which expressions or declarations of pain and suffering are admissible in evidence in behalf of the person making them is one of much importance, especially in view of the rapid growth of personal injury suits, and the increased frequency with which physicians are called as expert witnesses. At the outset it is necessary to note the distinction, often overlooked, between mere descriptive statements of pain, or other subjective symptoms of a malady which furnish no intrinsic evidence

of their existence, and those exclamations or complaints which are the spontaneous manifestations of distress, and which naturally and instinctively accompany and furnish evidence of existing suffering. Exclamations and expressions of the latter kind are the natural language of pain; and, whenever its existence at any particular time is a relevant fact, such manifestations of it are always admissible as original evidence, under the ordinary application of the rule of res gestæ. They are in the nature of verbal acts, and may always be testified to and described by any person in whose presence they were uttered. We take it that it is to expressions of this nature to which Mr. Greenleaf refers when he says:

"Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are also original evidence. If they were the natural language of the affection, whether of body or mind, they furnish satisfactory evidence, and often the only proof, of its existence. And whether they were real or feigned is for the jury to determine." Greenl. Ev. § 102.

It may not always be easy to draw the line between such complaints or expressions and mere descriptive statements, but the authorities all recognize and make the distinction, which is one that accords with the experience and observation of every one. Hagenlocher v. Coney Island, 99 N. Y. 137, 1 N. E. 536; Roche v. Brooklyn, 105 N. Y. 294, 11 N. E. 630.

The question when, if ever, mere descriptive statments of pain or other subjective symptoms of malady are admissible in evidence, is one of more doubt and difficulty. In the latter part of the section just cited, Mr. Greenleaf says:

"So, also, the representation by a sick person of the nature, symptoms, and effects of the malady under which he is laboring at the time are received as original evidence. If made to a medical attendant, they are of greater weight as evidence; but, if made to any other person, they are not on that account rejected."

This cannot be sustained under the rule of res gestæ. It is therefore clearly an exception to the rule excluding hearsay evidence.

Various reasons have been advanced for making the exception. One is that as the opinion of a surgeon or physician as to the condition and symptoms of his patient and the causes and nature of his

malady is clearly competent, as coming from an expert, and as this opinion must necessarily be formed in part on the statement of his patient as to subjective symptoms, it would be unreasonable to receive the opinion, and exclude the reasons or grounds on which it was founded. This is all true, but it furnishes no ground for permitting a physician, any more than any other expert, to give an opinion founded on hearsay evidence. When evidence has been introduced on the trial tending to prove that certain symptoms in fact existed, it is, of course, competent to show that their existence was communicated to the physician for the purpose of showing all the grounds upon which he based his opinion. Another reason sometimes advanced is that where statements are made by a patient to his medical attendant, with a view to be acted on in a matter of such grave personal concernment to the patient, he has a strong and direct interest to adhere to the truth. This may go to the weight of the evidence, but not to its competency. Moreover, these reasons are not as broad as the rule.

A third reason, and probably the principal one, for making the exception, was founded on the supposed necessities of the case, to-wit, that symptoms of a malady are usually in part subjective, which can only be ascertained from the statements of the patient himself; and, as he could not testify in his own behalf, the only way in which these symptoms could be proved was by evidence of his complaints to others.

Abuses resulting from receiving in evidence simple descriptive statements of pain and suffering, or other symptoms and effects of an injury or malady, and the fact that the necessity for their admission has been mainly removed by statutes making parties competent witnesses in their own behalf, have led to a re-examination and material limitation of the former rule. According to the great weight of modern authorities, the mere descriptive statements of a sick or injured person as to the symptoms and effects of his malady are only admissible under the following circumstances: First, They must have been made to a medical attendant for the purposes of medical treatment. Second, they must relate to existing pain or other symptoms from which the patient is suffering at the time, and must not relate to past transactions or symptoms, however closely related to the present sickness. This was probably always the rule, but the courts are now dis-

posed to apply it more strictly than formerly. Third, such statements are only admissible when the medical attendant is called upon to give an expert opinion based in part upon them. He cannot merely testify to the statements, and then stop. In the absence of any expert opinion based on the statements, they stand on the same footing as if made to a nonexpert witness.

We find no case which expressly and directly announces this proposition, but we think it is clearly implied, and logically follows, from the fact that such statements are held to be admissible only when made to a person of scientific medical knowledge. Moreover, there is a practical reason for such a rule. A physician has both the ability and opportunity of observing and ascertaining whether the patient's statements of subjective symptoms correspond with the objective symptoms, and hence of forming a fairly accurate opinion as to whether such statements are true or false; and, when he comes to give his expert opinion, presumably he will base it on such statements only so far as he believed them to be true. He might truthfully and safely testify that the patient made certain statements to him, and yet be unwilling to venture an opinion that they were true, or, if true, that such symptoms were caused by or in any way connected with the injury complained of.

So far as we can discover, this is as far as any of the courts have ever gone in modifying or limiting the former rule on this subject, even in jurisdictions where parties are competent witnesses in their own behalf. Some of these limitations are perhaps illogical and inconsistent on principle with the retention of any part of the old rule. Strong reasons can be urged in favor of wiping out the rule altogether, and putting statements to medical attendants on the same footing as those made to any one else, and holding them competent only when admissible under the ordinary application of the rule of res gestæ, and thus place the whole subject under the general rules of evidence. If the question was res integra in this state, we are strongly inclined to think that we would so hold; but we have repeatedly held, expressly or impliedly, that statements made in the manner and under the circumstances above indicated are competent evidence. Jones v. Chicago, 43 Minn. 279, 45 N. W. 444; Johnson v. Northern Pacific, 47 Minn. 430, 50 N. W. 473; Brusch v. St. Paul, 52 Minn. 512, 55 N. W.

57; Cooper v. St. Paul, 54 Minn. 379, 56 N. W. 42; Firkins v. Chicago, 61 Minn. 31, 63 N. W. 172; Miller v. St. Paul, 62 Minn. 216, 64 N. W. 554.

It is true that in none of these cases did we discuss or consider the question at any length, but merely voiced the apparently unanimous sentiments of other courts, and assumed that such was the settled law. But after the highest appellate court of a state has so often passed upon a question, and especially where its decisions are in accordance with an unbroken line of authorities in other jurisdictions, trial courts and counsel have a right to assume that the law on that point is settled, and to govern themselves accordingly in the trial of causes. Therefore we might feel compelled, under the doctrine of stare decisis, to hold such statements admissible in evidence so far as we have already so decided, but no further. An examination of all the cases referred to, when the language of the court is read and construed in the light of the particular facts of each case, will show that we have never held such statements competent evidence, except under circumstances and subject to the limitations already suggested. It only remains to apply the rules to the facts of this case.

First. The plaintiff's wife being a nonexpert witness, it was only competent for her to testify to such exclamations or complaints as were apparently the natural and instinctive manifestations of existing pain and suffering. Assuming, without deciding, that the question propounded to her was too broad, and called for more than was admissible under the rule, no such objection was urged or called to the attenion of the court. The only point suggested by the objection was the incompetency of complaints made by the plaintiff after he left the hospital, as distinguished from similar complaints made while he was in the hospital. An objection based on any such distinction was clearly untenable.

Second. The part of Dr. Rutledge's answer which defendant's counsel moved to strike out was not responsive to the question put to him, which was limited to expressions of pain. Therefore counsel waived nothing by not objecting to the question. As we construe the grounds of counsel's motion as finally stated by him, they resolve themselves into two: First, that the evidence was inadmissible under the pleadings; second, that it was mere hearsay. The first is untenable, and it

only remains to consider the second. We are of opinion that the answer was not admissible. Without going into any extended discussion of a somewhat delicate subject, we hold that the statement of plaintiff, testified to by the witness, cannot be said, in any proper sense, to refer to any existing symptoms from which he was suffering, or of which he had any present consciousness at the time, but was really in the nature of a mere narration of his past symptoms or past experience. In all the cases in which we have held statements made to a medical attendant admissible, they have referred to pains or other effects of the injury from which the patient was suffering, and of the existence of which he must have had a present consciousness at the time of making the statement. This cannot be said to be the case with the disability referred to, and we do not think the rule should be extended so as to apply to it. When we consider the difficulty, if not impossibility, of a physician's determining either the existence or the cause of such a disability, it would be repugnant to the common sense of every one to permit it to be proven by the unsworn statement of the party himself, which, in the very nature of things, it would be almost impossible to rebut.

There is another serious objection to allowing this hearsay evidence to go to the jury. Dr. Rutledge was not called on to give an expert opinion as to the nature, cause, or extent of plaintiff's injuries. He was merely called on to testify to plaintiff's objective symptoms, which he personally observed, and to statements of the plaintiff himself, and was then dismissed from the witness stand. Therefore his testimony as to plaintiff's statements stood in the same position as if given by a nonexpert witness, from whose lips it would have been pure hearsay. It went to the jury without even the safeguard of the expert opinion of the witness as to its truth or falsity, or as to the physical condition of the plaintiff based upon it. How much of this very large verdict may have been awarded on account of this unsworn and uncorroborated statement of the plaintiff it is impossible to tell, but the case illustrates with exceptional force the danger and injustice of allowing such statements to be given in evidence. We do not place our decision on this ground, for the reason that it may be doubtful what would be the effect of plaintiff's failure to follow his testimony with other evidence which would have made it competent

if admissible under any circumstances,—whether it would make available defendant's original objection to it as hearsay, or whether it would have been his duty to move to strike it out, or to move for a new trial on that ground. We have called attention to it to illustrate the great impropriety and danger in allowing this kind of evidence to go to the jury at all, and especially in this way. What we have said as to the error in refusing to strike out the answer of Dr. Rutledge is equally applicable to the admission of the testimony of Dr. Penny on the same subject.

Third. There is nothing in the objection to the question propounded to Dr. Hendricks. On cross-examination of a witness, testifying as an expert, counsel may be permitted, for the purpose of testing his skill and accuracy, to ask him hypothetical questions, pertinent to the inquiry, assuming facts having no foundation in the evidence.

Fourth. As a new trial must be granted, it is unnecessary to consider whether the damages are excessive. But, as bearing on the question of the taxation of costs on this appeal, we will say that while, judging merely from the record, we think the verdict is considerably larger than we, as jurors, would have awarded, yet we would not feel justified in disturbing it on that ground.

Order reversed.

CANTY, J. I concur in the result arrived at in this case, but not in the distinctions made in the foregoing opinion between statements that are admissible when made to a physician and those that are admissible when made to a layman. Where the statements of the person are representations or complaints as to his then existing pain or suffering, the law should hold such statements to be a part of the res gestæ, and competent evidence, whether made to a physician or a layman. To be strictly logical, perhaps, nothing should be regarded as a part of the res gestæ except those gestures, exclamations, and expressions of suffering which are forced from the person when the pain or affliction itself speaks. But so narrow and strict a rule is not practicable. The expression of suffering may be one-half groans and exclamations and one-half words, or nine-tenths of the former and one-tenth of the latter, or vice versa. How can the law say how much of the utterance shall consist of words, and how much of groans, sighs,

and exclamations; or that it may not all consist of words? Again, how can the law say with what degree of anguish the words shall be uttered? One person complains cheerfully, and even laughs and jokes, when he is suffering intense agony, while another complains most dolefully about the slightest affliction. For these reasons I cannot agree with the majority or with the New York cases, which attempt to make a distinction between words describing present existing suffering and other exclamations indicating such suffering, but such words as well as such exclamations should be held to be a part of the res gestæ.

But, as to statements made by the patient to his physician, the great weight of authority goes much further than this, and holds that evidence of such statements, describing past suffering or past symptoms, is admissible as original evidence to prove that such suffering or such symptoms existed as stated. In my opinion, such a statement, even though made to a physician, is neither independent, original evidence, nor corroborative evidence. It is admissible merely for the purpose of showing that at the time the physician was correctly informed, made his investigations in the light of all the known facts, and was therefore likely to have reached a correct conclusion as to the nature, extent, and cause of the malady. Of course evidence of such conclusion of opinion is not competent, without showing the facts on which it is based as the physician understood those facts at the time he examined and treated the patient. But it is also necessary to prove by competent evidence that these facts existed as the physician understood them to exist, otherwise a fictitious case may in every instance be built up on the mere statements of the patient, and laid before the jury without the sanction of an oath or the benefit of cross-examination. There is scarcely any reason why a statement should be any more sanctified or competent because made to the plaintiff's physician than if made to his attorney. The expert physician enlisted in a cause is usually about as biased a partisan as the attorney enlisted therein.

I concede that the weight of authority is against my position here, as well as against the position taken in the majority opinion. But if that authority is clearly and unquestionably wrong, the courts ought not to follow it. The courts have simply been running in a rut of error, and, the longer they so run, the deeper the rut will become.

When parties to an action were not competent witnesses, there was some reason for the rule holding that such a statement or narration of facts that existed in the past is competent, original evidence when made to a physician for the purpose of medical treatment. Necessity is often a strong reason. But, except in cases where the person making the statement to the physician is dead or insane, this reason has long since ceased, and the rule should cease with the reason. The party can now be called as a witness to prove that what he stated to the physician is in fact true. Plaintiff's statements that he had lost his sexual powers did not describe present physical pain or suffering, but are statements as to what occurred in the past. They are therefore incompetent as evidence, even if made to a physician for the purpose of treatment, unless the existence of the fact stated has been proved by other competent evidence, but even then such statements are only competent as evidence for the purpose above stated.