MARK CHRISTIAN PETERSON, A MINOR, BY THEODORE W. PETERSON, HIS FATHER AND NATURAL GUARDIAN, AND ANOTHER v. RICHFIELD PLAZA, INC., AND ANOTHER. NEW ENGLAND FURNITURE COMPANY, APPELLANT.

89 N. W. (2d) 712.

April 18, 1958—No. 37,261.

*Meagher, Geer, Markham & Anderson, David W. Nord,* and *O. C. Adamson II,* for appellant.

*Harold J. Sorensen* and *Herbert C. Davis,* for respondents.

KNUTSON, JUSTICE.

This is an appeal from an order of the trial court denying defendant's motion for judgment notwithstanding the verdict or a new trial.

Defendant New England Furniture Company has for many years been engaged in the business of operating a furniture store in Minneapolis. On February 24, 1954, it opened a suburban store in Richfield. The store building was owned by defendant Richfield Plaza, Inc. The case originally was commenced against both defendants to recover damages for injuries sustained by Mark Christian Peterson, a child of tender years, when he was alleged to have fallen from a balcony at the rear of the store building. At the close of all the evidence, the court dismissed the case as to Richfield Plaza, Inc. Inasmuch as the propriety of so doing was not argued in appellant's brief, we shall refer to the New England Furniture Company as defendant.

At the rear of the store involved was a balcony, 11 feet above the

main floor, running the entire width of the store. A railing 2 feet 8½ inches high was erected in front of this balcony. The railing consisted of a horizontal bar supported by upright metal bars, one-half inch square, which were fastened to the floor at the bottom and to the railing at the top. These bars were spaced 11½ inches apart. The balcony was reached from the main floor by means of a stairway located somewhere near the center of the balcony. The stairway was in the form of an inverted T, the bottom 2 wings running parallel with the balcony to a common landing about halfway up to the balcony. From this landing a single stairway proceeded at right angles through the balcony, emerging about halfway between the front and rear of the balcony. The edge of the balcony, where the stairway cut through it, was protected by a railing identical with that in front of the balcony which has been described.

The portion of the balcony to the left of the stairway, as a person proceeded upward, was used for an office. The other side of the balcony was used to display juvenile furniture. As a person reached the head of the stairs there was a cashier's counter about 4 or 5 feet to his left. Behind this counter or shelf was the office space, in which were located a credit desk and other office furniture. The office space was entered through a swinging door or gate about 20 inches wide, which was next to the railing at the edge of the balcony. The hinges on the door were on the side away from the railing. It was hinged so that it could swing either way and had no lock or other device to keep it shut. This door was located almost directly above the bottom step on the main floor of the left wing of the stairway as one faced the balcony.

At the time of the accident giving rise to this litigation, Mark Peterson was about 2 years old. His mother, Evelyn Bernice Peterson, was employed by defendant as a cashier. On the evening of April 17, 1954, Theodore W. Peterson, Mark's father, called at the store about closing time to take his wife home. He brought Mark with him. When he arrived at the store he was informed that his wife had purchased two chairs and that he was to pick them up on a loading platform to the rear. He inquired of Marvin N. York, the store manager, what he could do with Mark, and York told him that he would watch Mark. At that time Mrs. Peterson was counting money in the office. York went about his business

of closing up the store, leaving Mark alone. Mrs. Peterson heard him whimpering on the main floor so she went down and carried him up to the office with her. She placed him in a chair at a desk behind the place where she was working at the cashier's cage. Her 13-year-old daughter, Gwen Peterson, who had come into the store after Theodore Peterson and Mark, then arrived at the office, and Mrs. Peterson told her to watch Mark. The mother then turned her back on the children and went back to her work. Gwen asked if she could help her mother but was told to watch Mark. Gwen, however, left her place by Mark and came over to where her mother was working. The mother then shortly heard a squeak, such as is made by the swinging door when it is moved, and shortly thereafter she heard a thud. She looked and saw that Mark was gone and then went to the railing and saw Mark lying on the floor below with one foot on the bottom step of the stairway.

No one actually saw Mark fall. There is evidence from which the jury could find that the manager of the store, as well as the president of the New England Furniture Company and his wife, prior to the time that Mark fell, had discussed the dangerous nature of the railing in so far as children were concerned. It was known that children accompanied their parents to the balcony when they came there to pay bills and for other reasons. While the office was not intended to have children in it, Ray Holt, a salesman for the company, testified that he had seen children in the office a number of times. Mr. York, the manager, testified that he had not seen children in the office during the 7 weeks the store had been open. Mrs. Peterson said that 6 or 7 times previous to the accident children had gone past the swinging door and that she had taken them out.

Mark suffered a skull fracture in the fall. The jury returned a verdict for plaintiff. No question is raised here as to the amount of the verdict so a more detailed discussion of the injuries is unnecessary.

Defendant's contentions are: (1) That the evidence, being entirely circumstantial, is insufficient to establish negligence on the part of defendant; (2) that the law applicable generally to trespassing children is inapplicable where the child is accompanied by its parents; (3) that the parent's failure to supervise a child, when the parent knows that the child is in a place of danger, constitutes an intervening efficient

cause; and (4) that a physician may not relate hearsay declarations made to him as to past symptoms of the patient's illness.

■ The degree of proof required to establish negligence by circumstantial evidence has been stated frequently by this court and is not seriously in dispute by the parties to this litigation. Many of our cases are collected in Smock v. Mankato Elks Club, 203 Minn. 265, 266, 280 N. W. 851, 852,[1] where we said:

"* * * It was not necessary for the plaintiff to exclude every other reasonable hypothesis by the circumstantial evidence which she introduced, but a jury may not be permitted to guess as between two equally persuasive theories consistent with the circumstantial evidence. The evidence must be something more than consistent with the plaintiff's theory of how the accident occurred. Reasonable minds functioning judicially must be able to conclude from the circumstances that the theory adopted by the verdict outweighs and preponderates over any other theory."

It is defendant's contention that the circumstantial evidence is as consistent with the theory that Mark fell down the stairs as that he fell through the railing; that, inasmuch as there is no claim that the stairway itself was negligently constructed, the evidence is as consistent with a theory upon which no claim of negligence can be predicated as it is with a theory upon which negligence can be based; and therefore, that the verdict is based on speculation and conjecture.

In order to fall down the stairway and be in the place where he was found, the boy would have had to go through the gate; walk around the railing protecting the top part of the stairway; walk or fall from the top of the balcony to the landing halfway down to the floor; and then fall down the balance of the stairway, which ran at right angles to the top section. The jury was justified in concluding that it was more likely that he fell through the railing near the door, which was directly above the place where he was found. Mrs. Peterson heard only one thud. The severity of the injury would be more apt to result from a fall from the balcony than if he had fallen or had rolled down

---

[1]For a discussion of this and other cases, see 34 Minn. L. Rev. 185.

the stairway. The time element, upon which defendant relies, is at best based on estimates and is not so definite that it must be held to be conclusive. The evidence sufficiently meets the test for establishing a fact by circumstantial evidence.[2]

2. With respect to the establishment of negligence, the court instructed the jury:

"* * * in considering the alleged negligence of the defendant, it is the law that one who maintains on its premises an artificial condition is liable for resulting injury to young children present thereon, if:

"(a) The place where the condition is maintained is one upon which the possessor knows or should know that such children are liable to trespass, and

"(b) The condition is one which the possessor knew or should know which it realizes or should realize as involving an unreasonable risk of death or serious bodily injury to such children, and

"(c) The children because of their youth do not discover the condition or realize the risk involved in their intermeddling in it or coming in the area made dangerous by it; and

"(d) The utility to the possessor maintaining the condition is slight as compared to the risk to young children involved therein.

"You are instructed in applying the foregoing rule that whether or not the plaintiff Mark Peterson was on the premises by express or implied invitation, or mere acquiescence of the defendant, or contrary to the defendant's wishes, such as trespasser, it is immaterial to said plaintiff's right to recover if he has established by a fair preponderance of the evidence each of the foregoing conditions."

The instruction was substantially the rule of Restatement, Torts, § 339, which we have now followed for some time.[3]

---

[2]See, for instance, Paine v. Gamble Stores, Inc. 202 Minn. 462, 279 N. W. 257, 116 A. L. R. 407, where substantially the same claims were made.

[3]Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 261 N. W. 194; Middaugh v. Waseca Canning Co. 203 Minn. 456, 281 N. W. 818; Weber v. St. Anthony Falls Water Power Co. 214 Minn. 1, 7 N. W. (2d) 339; Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N. W. (2d) 382, 154

Defendant does not quarrel with the court's statement of the rule but contends that the rule stated applies only to trespassing children; that the child involved here was not a trespasser but a licensee; and that the rule has no application to licensees. It is difficult to see why a licensee should not be entitled to at least as great care as a trespasser. In Meagher v. Hirt, 232 Minn. 336, 339, 45 N. W. (2d) 563, 565, we said:

"Our previous decisions in cases of this kind make it clear that this duty to exercise due care to eliminate conditions on real property which are hazardous to children is the same * * * whether the child is an invitee, licensee, or trespasser."

Prosser, Torts (2 ed.), discusses at length the present rules which we follow. With respect to its applicability to children licensees, he says in § 77, p. 450:

"* * * the doctrine of 'attractive nuisance' applies to licensees as fully as to trespassers."

A child who is a licensee has at least all the rights of a trespasser and probably some more.[4]

It seems obvious to us that this child, even though considered to be a licensee, was within the above rule, and the instruction consequently

A. L. R. 1325; Ewing v. George Benz & Sons, 224 Minn. 508, 28 N. W. (2d) 733; Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18; Chase v. Luce, 239 Minn. 364, 58 N. W. (2d) 565; Doren v. Northwestern Baptist Hospital Assn. 240 Minn. 181, 60 N. W. (2d) 361, 42 A. L. R. (2d) 921; Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N. W. (2d) 354; Davies v. Land O' Lakes Racing Assn. 244 Minn. 248, 69 N. W. (2d) 642; Knox v. City of Granite Falls, 245 Minn. 11, 72 N. W. (2d) 67, 53 A. L. R. (2d) 1091.

[4]See, Case Law, 6 Wis. L. Rev. 51; see, also, Restatement, Torts, § 341, respecting duties to licensees. *Illustration* 1 reads:

"The A Manufacturing Company permits children of its workmen to enter the factory for the purpose of bringing their fathers' dinner to them. B, the daughter of one of the A Company's workmen, comes into the factory for this purpose. While there, B is hurt by the careless manner in which other workmen of the A Company carry on their work. The A Company is liable to B."

was proper.

Defendant relies to some extent upon Mosher v. Anton G. Hanson Co. 193 Minn. 115, 258 N. W. 158. At first blush, the opinion in that case would seem to support, to some extent, defendant's views. However, it can be easily distinguished. That case involved an action for damages for injuries sustained by a boy 2 years and 7 months old when he fell into a grease pit in a public garage. No consideration was given to the rules discussed above or to the difference between the care required toward children and toward adult licensees, but we did hold that defendant had violated no duty to the boy, who was a licensee. In so doing, we said (193 Minn. 119, 258 N. W. 160):

"* * * defendants owed to Donald or to other children who might go near the grease pit under the same circumstances no duty to erect special guards under the rail pipe. The ordinary use of the premises required that the door behind the pit opening outside be kept open so that persons could drive on the pit. The pit was used every day several times. Reasonable care under the circumstances required no more than what was done. The premises were not constructed with the idea that children would normally be around the grease pit or use the garage as a playground. *Hence defendants were under no duty to anticipate the presence of children* and to erect special guards under the rail pipe." (Italics supplied.)

In the case now before us, not only does the evidence establish that defendant was under a duty to anticipate that children would be on the balcony but the evidence shows that it knew that children were there on many occasions. It also knew that children who accompanied their parents to the balcony frequently wandered away from them. Further than that, officers and employees of defendant knew that the balcony was dangerous to children and had discussed that matter among themselves. We do not consider the above case controlling, even if it expresses the correct rule in view of the facts of that case. The same can be said about cases from foreign jurisdictions cited by defendant. Cases can be found contrary to the views expressed here, but we decline to follow them.[5]

---

[5]See, for instance, Magnolia Petroleum Co. v. Porter (Tex. Civ. App.) 22 S. W. (2d) 695.

Defendant next contends that the negligence of Mrs. Peterson in failing to look after Mark was an intervening cause. Defendant concedes that the negligence of a parent will not be imputed to a child non sui juris so as to bar recovery when the action is brought to recover for the child. That is precisely what we held in Mattson v. Minnesota & North Wisconsin R. Co. 95 Minn. 477, 488, 104 N. W. 443, 448, 70 L. R. A. 503, where we said:

"* * * The right of an infant to damages for injuries to his person caused by the wrongful act of others is a property right, and entitled to the same protection in the courts as is accorded other property held or owned by him. He is entitled to the protection of the law equally with persons who have attained their majority, and to refuse him relief on the ground of his parents' indifference or negligence would be to deny it to him. To impute to him negligence of others is harsh in the extreme, whether the negligence so imputed be that of his parents, their servants, or his guardian."

In the above case we overruled the decision in Fitzgerald v. St. Paul, M. & M. Ry. Co. 29 Minn. 336, 13 N. W. 168, which had held to the contrary.

Nor can it be said that the negligence of Mrs. Peterson constituted an intervening cause. The negligence of defendant was a continuing one. It existed as long as there were children on the balcony. The defendant ordinarily will not be relieved of liability by an intervening cause which could reasonably have been foreseen.[6] Mr. York had assured Mr. Peterson that he would look after Mark. He then failed to do so. He knew that Mrs. Peterson was busy winding up the day's affairs. He could easily have anticipated that if Mark was taken to the balcony he might wander off by himself. Under these circumstances, Mrs. Peterson's negligence, if it were established, would not constitute an intervening cause.

Saturnini v. Rosenblum, 217 Minn. 147, 14 N. W. (2d) 108, 163 A. L. R. 294, relied upon by defendant, does not hold otherwise. That action was brought by a special administrator of the estate of a young

[6]Prosser, Torts (2 ed.) § 49.

boy who had lost his life when he fell from a window in a building. The action is based on our wrongful death statutes and is brought for the next of kin. The proposition that the negligence of the parents was an intervening cause was mentioned there for the first time in the brief of appellant on appeal. We did state in our opinion that it was one of the issues presented in the appeal. However, an examination of the record and briefs in that case shows that the trial court instructed the jury as follows:

"It is * * * the law that if both parents, or either of them, failed to exercise ordinary care with respect to a known danger, then *that parent may not recover damages* if such conduct, standing alone or coupled with the acts of the defendant, constitutes a direct cause of the accident. In other words, no matter how negligent the defendant might be—assuming that he was—if the parents of the child were negligent and their negligence contributed to the direct cause of the accident, such parent may not recover." (Italics supplied.)

The negligence of the parents as an intervening cause is mentioned in the brief of appellant, but it is not discussed. In our opinion we did not pass on the question, but we did say (217 Minn. 154, 14 N. W. [2d] 112):

"* * * the question of *contributory negligence* on the part of the parents was possibly for the jury's determination, although a careful search of the record fails to disclose any substantial evidence thereof." (Italics supplied.)

There is, however, a vital difference in the two cases. In the Saturnini case the action is brought by a special administrator for the benefit of the next of kin, including the parents. All the trial court submitted to the jury was the proposition that, if either parent was guilty of negligence, that parent could not recover. The court did not submit, and we did not hold, that the negligence of the parent would bar a recovery for the benefit of the minor child. Here, the child sues, by his parent, to recover damages for injuries to himself. The two situations are not at all analogous, and our decision does not hold that the negligence of the parent is or may be an intervening cause.

■ Finally, defendant contends that the trial court erred in admitting as part of the testimony of Dr. Sidney K. Shapiro, one of plaintiff's attending physicians, certain statements made to him by plaintiff. Dr. Shapiro was permitted to state, over the objection of defendant, that plaintiff complained of headaches, occurring on the average of four or five times per week; that he complained of being easily upset; that his legs hurt sometimes; and that he complained of bedwetting. Prior to being interrogated as to these complaints, Dr. Shapiro testified that plaintiff was brought to him for treatment and that, in order to determine what he was suffering from, it was necessary to question him concerning the trouble he was having. He testified that some of these conditions existed at the time plaintiff was being examined by him, but he was also permitted to testify to statements made by plaintiff concerning symptoms which had existed prior to the physician's examination.

It is not likely that the testimony of Dr. Shapiro could be said to be so prejudicial as to require a new trial even though erroneously admitted. The injuries involved here are to the head of a 4-year-old boy. The possibility that a child of this age would fabricate a false story is extremely remote. The principle involved, however, is of considerable importance to bench and bar. It arises frequently in the trial of lawsuits, and the difficulty of administering the rule we follow justifies a reexamination of the question.

The rule we have followed in the past is stated in Berg v. Ullevig, 244 Minn. 390, 398, 70 N. W. (2d) 133, 138, as follows:

"* * * It is well settled in Minnesota that mere descriptive statements of a sick or injured person as to the symptoms and effects of his injury or malady are only admissible when they have been made to a medical attendant for the purpose of medical treatment. They must, however, relate to existing pain or other symptoms from which the patient is suffering at the time and they must not relate to past transactions or symptoms, however closely these may be related to the present sickness or the present suffering from the injury. And even then such statements are only admissible when the medical attendant is called upon to give an expert opinion based in part upon them."

The rule which we have followed has its inception in this state in our

opinion in Williams v. G. N. Ry. Co. 68 Minn. 55, 61, 70 N. W. 860, 863, 37 L. R. A. 199, 202, where, after a reexamination of this subject, Mr. Justice Mitchell, speaking for the court, said:

"* * * the mere descriptive statements of a sick or injured person as to the symptoms and effects of his malady are only admissible under the following circumstances: First, They must have been made to a medical attendant for the purposes of medical treatment. Second, they must relate to existing pain or other symptoms from which the patient is suffering at the time, and must not relate to past transactions or symptoms, however closely related to the present sickness. * * * Third, such statements are only admissible when the medical attendant is called upon to give an expert opinion based in part upon them. He cannot merely testify to the statements, and then stop. In the absence of any expert opinion based on the statements, they stand on the same footing as if made to a nonexpert witness."

In a well-reasoned decision by Judge Learned Hand, in Meaney v. United States (2 Cir.) 112 F. (2d) 538, 539, 130 A. L. R. 973, 975, the court said:

"* * * A man goes to his physician expecting to recount all that he feels, and often he has with some care searched his consciousness to be sure that he will leave out nothing. If his narrative of present symptoms is to be received as evidence of the facts, as distinguished from mere support for the physician's opinion, these parts of it can only rest upon his motive to disclose the truth because his treatment will in part depend upon what he says. * * *

"The same reasoning applies with exactly the same force to a narrative of past symptoms, * * *. A patient has an equal motive to speak the truth; what he has felt in the past is as apt to be important in his treatment as what he feels at the moment."

Professor Wigmore says that such a rule is "rational and practical."[7]

McCormick, in his treatise on Evidence, § 266, has the following to say:

"The argument of special reliability of the patient's statements made

---

[7] 6 Wigmore, Evidence (3 ed.) § 1722.

in consultation for treatment is a strong one and has induced some courts to extend the scope of the hearsay exception to include statements of the patient as to *past* symptoms, when made to a doctor for treatment. Certainly such declarations are necessary for diagnosis, and when the circumstances are consistent with good faith, they are highly reliable and a wider acceptance of this extension may well be expected."

The entire subject is exhaustively annotated in Annotations, 67 A. L. R. 10, 80 A. L. R. 1527, and 130 A. L. R. 977.

In this state we hold that hospital records and charts are admissible, when not privileged, to prove diagnosis, treatment, or medical history of the patient pertinent to the medical or surgical aspects of the case. Brown v. St. Paul City Ry. Co. 241 Minn. 15, 62 N. W. (2d) 688, 44 A. L. R. (2d) 535.

Statements made to a physician by a patient seeking treatment for some injury or ailment, not part of the res gestae, are admitted, if at all, as exceptions to the hearsay rule for the reason that it is assumed that they are trustworthy, since a patient would not be apt to state untrue facts to his physician when proper treatment depends upon a diagnosis which may be based, at least in part, on what the patient tells the doctor he is suffering from. It has been supposed that the truth of statements made to a doctor in his presence as to subjective symptoms can be more accurately appraised by the doctor for truthfulness by checking against the objective findings he then makes.[8] There may be some merit in that proposition, but, if the statements of the patient are deemed trustworthy for the reason that proper treatment rests on the truth of such statements, it is difficult to distinguish between the reliability of statements made in the doctor's presence as to subjective symptoms existing at that time and statements made which relate to similar symptoms, pertaining to the injury or ailment which the doctor seeks to diagnose, that the patient has experienced before coming to the doctor's office. In other words, why is a statement made by a patient in the presence of the doctor that "I have a headache now" any more trustworthy than a statement that "I had a headache yesterday or last week"? We can perceive of no reason for such distinction. Our

[8]Williams v. G. N. Ry. Co. 68 Minn. 55, 70 N. W. 860, 37 L. R. A. 199.

rules of evidence should have some consistency. Our present rule is difficult to administer[9] and inconsistent with the rule we follow in admitting hospital records. We think that the better rule is that a statement made to a physician to whom a patient goes for treatment, as to pain and suffering he has experienced and regarding the injury or ailment for which he seeks treatment, is admissible whether the pain and suffering exists at the time of the doctor's consultation or at a time prior thereto.

We are not, however, here dealing with the admissibility of statements made to a physician who examines the patient for the sole purpose of qualifying himself as a witness.[10]

Care should also be exercised in distinguishing between statements made to a physician relating to conditions and symptoms of the injury or ailment for which treatment is sought and statements made to the physician as to the cause of the injury or the circumstances concerning the manner in which the accident occurred. Such statements are inadmissible.[11] Similar statements in hospital records likewise have been held to be inadmissible.[12]

It seems that this distinction is not always observed. In Strommen v. Prudential Ins. Co. 187 Minn. 381, 387, 245 N. W. 632, 634, we cite both Weber v. St. Paul City Ry. Co. 67 Minn. 155, 69 N. W. 716, and Williams v. G. N. Ry. Co. 68 Minn. 55, 70 N. W. 860, 37 L. R. A. 199, in support of the rule as there stated:

"* * * it is competent for a physician to testify as to the present physical condition of his patient, and what he said as to such condition, particularly as to ills, pains, and symptoms arising from an accident or sickness; but anything in the nature of past events, such as the cause of the injury or sickness, must be excluded, and is inadmissible in an

---

[9]See, Donnelly, *The Hearsay Rule and its Exceptions,* 40 Minn. L. Rev. 455, 476.

[10]Sund v. Chicago, R. I. & P. Ry. Co. 164 Minn. 24, 204 N. W. 628; Annotations, 67 A. L. R. 15, 80 A. L. R. 1528, and 130 A. L. R. 978.

[11]Weber v. St. Paul City Ry. Co. 67 Minn. 155, 69 N. W. 716; Annotations, 67 A. L. R. 25, 80 A. L. R. 1529, and 130 A. L. R. 983.

[12]Brown v. St. Paul City Ry. Co. 241 Minn. 15, 62 N. W. (2d) 688, 44 A. L. R. (2d) 535; see, Annotation, 44 A. L. R. (2d) 553.

action for the injury."

After a reexamination of this matter, we now hold that, when an attending physician to whom a patient has gone for treatment of an injury or illness is called as a witness, he may testify as to the history of such injury or illness given to him by the patient for the purpose of diagnosis or treatment of such injury or illness, whether such statement relates to conditions or symptoms existing at the time of the consultation by the patient with the physician or to past symptoms and conditions, as long as they relate to the injury or illness for which the patient seeks treatment and are relevant to the issue then under inquiry.[18] All statements in prior cases inconsistent with this decision are now expressly overruled.

Affirmed.

---

[18]This rule is in harmony with that proposed by the National Conference of Commissioners on Uniform State Laws in a draft of Uniform Rules of Evidence at its meeting August 17 to 22, 1953, which was approved by the American Bar Association at its meeting in August 1953. Rule 63 reads:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

\* \* \* \* \*

"(12) *Statements of Physical or Mental Condition of Declarant.* Unless the judge finds it was made in bad faith, a statement of the declarant's \* \* \* (b) previous symptoms, pain or physical sensation, made to a physician consulted for treatment or for diagnosis with a view to treatment, and relevant to an issue of declarant's bodily condition;"

In a comment to Rule 63(12)(b) we find the following:

"Clause (b) admits evidence of declarations of past pain by a declarant when made to a physician. A case illustrating the need for this extension of the exception is Meaney v. U. S., 112 F. 2d 538, 130 A. L. R. 973. Wigmore calls this view 'rational and practical' and cites decisions from several states in accord. Evidence, 1722(c)."