CECIL BROWN *v.* A. F. JUDD AND E. A. MOTT-SMITH, PARTNERS UNDER THE NAME OF ATKINSON, JUDD & MOTT-SMITH.

APPEAL FROM DISTRICT COURT, HONOLULU.

ARGUED JUNE 6, 1906.                    DECIDED JULY 9, 1906.

FREAR, C.J., WILDER, J., AND CIRCUIT JUDGE DE BOLT
IN PLACE OF HARTWELL, J.

ACTION FOR MONEY HAD AND RECEIVED—*by mortgagor's assignee against mortgagee's attorney—no privity necessary.*

An action for money had and received may be maintained by the mortgagor's assignee against the mortgagee's attorney on foreclosure, to recover an excess of fee retained by or paid to the latter out of, and with knowledge on his part that it came out of, the proceeds of the sale. There need be no privity other than what is implied in law between the plaintiff and defendant.

OPINION OF THE COURT BY FREAR, C.J.

The plaintiff was the purchaser on execution sale of a mortgagor's equity of redemption. The defendants were the attorneys for the mortgagee on foreclosure under a power of sale contained in the mortgage, which also provided that the mortgagee might retain from the proceeds of the sale a reasonable attorney's fee. The action is brought to recover, under a count for money had and received an alleged excess retained as an attorney's fee from the proceeds of the foreclosure sale,—on the theory that such excess is a part of the surplus payable to the mortgagor or his assigns. The question is whether the action lies.

It is clear that a mortgagor may maintain an action of this kind against a mortgagee for the surplus, if any, after

payment of the amount secured by the mortgage, the expenses of foreclosure and a reasonable attorney's fee. It is equally clear, and is practically conceded in this court, although the contrary was contended by the defendants in the lower court, that a purchaser of the equity of redemption succeeds to the mortgagor's rights in this respect and may maintain such an action against the mortgagee.

Here the contentions or concessions of the respective parties begin to diverge—the defendants contending that an action cannot be maintained against the mortgagee's attorneys for want of privity or at least some contractual relation between the plaintiff and the attorneys and that the plaintiff can look to the mortgagee alone, the plaintiff contending that no privity or contractual relation is necessary. The latter view is undoubtedly correct. For instance, if the attorneys had collected the proceeds of the sale and still had them in their possession without having accounted with their principal, the mortgagee, there could be no question but that the action could be maintained against the attorneys on the familiar rule that money may be recovered by its owner from an agent or sub-agent before the latter has paid it over to his immediate principal. This is only an application of the general principle upon which an action for money had and received is founded, which is that it is an action of an equitable nature by which any one to whom money belongs may recover it from any other who has it and cannot conscientiously retain it or ought in equity and good conscience to refund it. As stated in a passage often quoted from *Hall v. Marston,* 17 Mass. 579, "Whenever one man has in his hands the money of another, which he ought to pay over, he is liable to this action, although he has never seen or heard of the party who has the right. When the fact is proved that he has the money, if he cannot show that he has legal or equitable ground for retaining it, the law creates the privity and the promise." That is to say, there need be no privity or promise in fact, either express or implied. The privity or promise, so far as there is any in theory, may be one created solely by law from the cir-

cumstance that one has the money of another without right to retain it, or, to put it another way, the privity or promise is a mere fiction for the purpose of enabling the owner to enforce the right under the form of an action upon contract. The obligation, when there is no privity, is sometimes called a quasi-contract but strictly speaking is not a contract at all, for it may arise not only without the assent of the person obligated but even against his express repudiation of any obligation. Keener, Quasi-contracts, 4-8; 2 Page, Contracts, Secs. 789-791.

This view, that no privity is necessary, was held recently by this court, after careful consideration, in the *Estate of Scrimgeour,* ante, p. 122, in which several cases are cited upon which the plaintiff relies in the present case. In that case an administrator obtained under claim of right from an insurance company the amount of certain policies of insurance upon the life of the deceased, but it was held that the beneficiaries, the "legal heirs," named in the policies, might maintain an action against the administrator for the amount so obtained, although they might have ignored the administrator in the matter and sued the insurance company itself—for its payment to the wrong party would not protect it,—and although they knew nothing about the policies until long after the administrator had collected the money.

The following cases bear much similarity to the present case. In *Wallace v. Shelley,* 30 Fed. 747, the sheriff employed an auctioneer to sell property on execution. The auctioneer made the sale and turned over the proceeds less his commissions. It was held that the sheriff had no right to employ the auctioneer at the expense of the owner of the property and consequently that the auctioneer had no right under his agreement with the sheriff to retain commissions out of money that really belonged to the owner and that he could be held in an action by the owner for money had and received to the extent of the moneys so retained by him. In *Brand v. Williams,* 29 Minn. 338, the sheriff, after selling property for enough to satisfy four executions and paying the amount of the first execution, paid the

balance over to the defendant without first paying the amount of the other three executions, and it was held that the owner of the claim on the fourth execution could recover from the defendant the amount of his claim. In *Soderberg v. Kings County,* 15 Wash. 194, the sheriff sold property under various foreclosure proceedings and without right retained certain commissions which he believed he was by law entitled and required to retain and paid them into the county treasury according to law as he believed. It was held that the assignee of the judgment debtors could recover from the county the amount so retained and paid, as a part of the surplus on the foreclosure sales. See also cases cited in the *Soderberg* case.

The case of *Atwell v. Jenkins,* 163 Mass. 362, relied on by the court below and by the defendants, throws little light upon the present case except by way of contrast. In that case B, under arrest, retained C as his attorney and telegraphed A to send C $400, which A did. Afterwards A sued C for the money on the theory that B was insane and therefore not bound and consequently that he, A, was not bound, and that therefore the money still belonged to him, A, but the court held that the contract was only voidable as to B, if he was insane, and that A was absolutely bound. Consequently the transaction amounted merely to a loan from A to B. C got the money through an arrangement with B with which A had nothing to do. It was held that A could not recover from C either on the theory of a contract with him, for there was none, or on the theory that it was his, A's money, which he could pursue into C's hands, as distinguished from a mere debt owing to him from B.

It does not follow, however, that the action lies, because no privity is necessary. It may not lie despite that. An action of this kind does not enlarge substantive rights. 2 Page, Contracts, Sec. 793. It remains to be seen whether the money was equitably the plaintiff's and not a mere debt owing to him, whether the defendants received it, and whether they can conscientiously retain it.

The court below gave judgment for the defendants upon motion at the close of the plaintiff's case as matter of law upon the sole ground of want of privity. It being now held that no privity was necessary, the question is whether the plaintiff made out a prima facie case on the evidence. The surplus, if any, of course belonged equitably to the plaintiff; and whatever was not required to pay the mortgage debt, the foreclosure expenses and a reasonable attorney's fee, was surplus. The amount retained as a fee was $150, which, the plaintiff contends and the evidence tends to show and we must assume for the purposes of this appeal, was excessive to the amount of $75. As to this excess the question is the same on principle as it would be if, as in several of the cases above cited, no fee at all had been retainable out of the proceeds. Are the defendants entitled to retain this out of the plaintiff's money? We will assume that they are holders for value under their arrangement with the mortgagee so far as the latter is concerned. But are they holders without notice of the plaintiff's rights? The evidence tends to show that they received the entire proceeds of the foreclosure sale. It perhaps on the other hand would justify an inference that they made some accounting with the mortgagee. If they merely retained their fee and paid the balance over, they of course had full knowledge that the entire fee came out of the proceeds, and are liable for any excess. But if they paid over the entire proceeds to the mortgagee and then were paid back their fee out of other money, or perhaps even out of the same money without knowing or having reason to know that it was the same money, they would not be liable. Their position in such case would be much the same as it would be if they had been paid in advance before receiving and paying over the proceeds; or as it would be if the proceeds had been paid directly to the mortgagee and the attorneys had received their fee without knowledge of its source, or as it would be if, as in *Mowatt v. McLelan,* 1 Wend. 174, the attorneys had collected a sum of money for their client and themselves had retained their fee, which in that case was found to be reasonable in

amount, out of it without notice that the party from whom it was collected still had any rights in it or was entitled to recover it back as paid under a mistake, and especially if, as in that case, before the attorneys were sued their position had changed as by the running of the statute of limitations against a suit over by them against their client—for in order to maintain an action of this kind, founded, as it is, on justice and equity, the defendant, if innocent, should be placed in statu quo.  2 Page, Contracts, Sec. 792.  Of course, a settlement merely by entries in the attorneys' books on an open account would not be sufficient to relieve them of liability.  1 Clark & S., Agency, Sec. 447;  Story, Agency, Sec. 300.  We will assume that they turned over the entire proceeds to the mortgagee; still it appears that they themselves made out a statement of account for the plaintiff, though in the name of the mortgagee, showing that their fee came out of the proceeds of the sale and therefore that they knew that fact.  In short, they were not holders of the plaintiff's money without notice and therefore could not conscientiously retain his money and are liable—unless the defendants can show the facts to be different.

Ordinarily we should expect the action to be brought against the principal rather than against the agent as that would be simpler and more just in most cases, and if the present action had been brought against the mortgagee there would have been no difficulty.  Of course, if the mortgagee were insolvent the reason and justice of bringing the action against the agent or attorney, who had received the plaintiff's money, would be apparent, and yet the mere fact that the mortgagee is solvent would not prevent the action from being brought against the attorneys, if it could otherwise be brought against them.  In several of the cases above cited there was no question of solvency or insolvency and yet to the argument that the action should have been brought against the principal, the court replied in substance that it was for the plaintiff to say against which of the two parties he should bring it, each being liable under the law.  In the present case, as already shown, the attorneys

knew that the surplus belonged to the plaintiff and yet received or retained the excess, if any, of their fee out of that surplus. The difference between taking with notice and taking without notice of the fact that the money belonged to another than the attorneys' client is illustrated by numerous cases, among which are several of those above cited. Only one other case will be cited by way of further illustration, that of *Bank of the Metropolis v. First National Bank,* 19 Fed. 301. In that case bank A sent to bank B certain checks for collection endorsing them "for collection." Bank B sent them for collection to bank C pursuant to an arrangement between them by which each sent to the other commercial paper for collection on the understanding that the proceeds were not to be returned specifically but were to be credited by the receiving bank to the sending bank and applied by way of setoff to any indebtedness of the sending bank to the receiving bank. Bank B became insolvent and bank A sued bank C. The court held that under the arrangement the relation of bank C to bank B was that of debtor and creditor and not merely of agent and principal, and that bank C was a holder for value; that is, as in *Mowatt v. McLelan,* supra, if the defendants had not known that the checks were the property of the plaintiff it would not have been liable in an action by the plaintiff, but that since the checks were endorsed for collection it had notice that they were not the property of bank B and so was liable to bank A notwithstanding that it had settled so far as those checks were concerned with bank B, and might have settled so as to escape liability by going through the ceremony of transmitting the money to bank B and having the same amount returned whether it was the same or different money so long as the defendant did not know the money belonged to another than bank B.

Accordingly we must hold that a prima facie case was made out against the attorneys. It remains for the district magistrate to decide, after hearing the evidence of the defendants, if they have any to offer, whether the fee retained or received by them was excessive, and, if so, whether the defendants may retain the

excess by showing that they received it without notice of the plaintiff's rights or for any other sufficient reason.

. The judgment appealed from is reversed and the case remanded to the district court for further proceedings.

*C. F. Clemons* (*Thompson & Clemons* on the brief) for the plaintiff.

Defendants in person.

