## IDA E. GARDNER v. UNITED SURETY COMPANY.[2]

March 11, 1910.

Nos. 16,379—(203).

**Accident Insurance — Presumption — Charge to Jury.**

   An accident policy, fully signed, dated June 30, 1908, was found in the safe and with other papers of the insured after his death, August 24.  *Held* to create a prima facie presumption that the policy contract was fully executed, and an instruction to the jury that under section 4730, R. L. 1905, the burden was upon the defendant to disprove by a preponderance of evidence the full execution of the contract was, at least, not prejudicial error.

**Same — Death from "Accidental Means."**

   When an injury is caused by means insured against, and the medical · treatment administered is rendered necessary and proper by the nature of the injury, the death of the insured, if caused solely by the injury and the subsequent medical treatment, is "accidental," within the meaning of a policy insuring against death caused by "external, violent, and accidental means."

Action in the district court for Hennepin county to recover $5,000 upon an insurance policy against accident.  The answer admitted

[1] Sp. Laws, 1874, p. 38, c. 1, subc. 4, § 8.         [2] Reported in 125 N. W. 264.

[Note]  What constitutes an accident within meaning of accident insurance . policy, see note to Fidelity & C. Co. v. Johnson (Miss.) 30 L.R.A. 206.

that defendant repudiated all liability upon the policy and declined to pay any part of the sum prayed for. The case was tried before Brooks, J., who denied defendant's motion for a directed verdict and submitted the case to the jury, which returned a verdict in favor of plaintiff in the sum of $5,161.56. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*M. H. Boutelle* and *N. H. Chase,* for appellant.

The burden of proving the contract sued upon was with the plaintiff and not, as instructed by the trial court, with the defendant to disprove such contract. It is self-evident that the two provisions of R. L. 1905, § 4730, subserve different offices:—the one confined strictly to negotiable paper, and actions thereon by an indorsee; the other to written instruments generally, and limited in its scope to prescribing a rule of admissibility of evidence. In the case of negotiable paper, the statute makes possession prima facie evidence of the indorsement, which necessarily presupposes the transfer of title in ordinary course. In the case of written instruments generally, the statute wholly excludes any probative force in the element of possession, and is limited to prescribing that such written instruments shall be proof of their signature or execution by the party by whom they purport to be executed until such signature or execution is denied by the signer's oath or affidavit. P. P. Mast & Co. v. Matthews, 30 Minn. 441.

It is self-evident from the charge of the trial court, in the case at bar, that this statute was construed as meaning that every written instrument, the signature of which is not specifically denied by answer under oath, was itself evidence of prima facie character of every essential element of its validity and completeness (in this case, as an obligation) to cast the burden of proof on the defendant to disprove these ordinarily necessary features of the plaintiff's case. In this the trial court was clearly in error. The burden of proof of establishing the contract sued on in this case was at all times with the plaintiff, and that burden of proof was neither shifted, nor in anywise modified by the statute, to which attention has been called. 1 Greenleaf, Ev.

§ 557. As repeatedly held by this court, this statute provides a rule of evidence, and not of pleading. Its sole office must therefore be confined to its effect in determining the conditions of admissibility and competency of proof. It has no reference whatsoever to the burden of proof on an issue relating to the contract's validity, or as respects establishing a cause of action based upon such contract. P. P. Mast & Co. v. Matthews, supra; Tucker v. Helgren, 102 Minn. 382; Nielson v. Schuckman, 53 Wis. 368.

The ultimate question raised by the facts presented the question whether this policy was unconditionally delivered by the defendant to the plaintiff in such manner as to create a mutually obligatory contractual relation. It was essential to plaintiff's cause of action that such completed contractual relation should be established, and the burden of proof on this issue remained with plaintiff throughout the case.

*Keith, Evans, Thompson & Fairchild,* for respondent.

The plaintiff established a prima facie case by introducing the policy in evidence; and by proving the death of the insured immediately following a severe accident; and that the policy was found in his safe with his other insurance policies.

In a long, unbroken line of decisions of this court, down to the very recent case of Tucker v. Helgren, 102 Minn. 382, the court has held that the proper construction of the statute is as stated by the trial court in the charge to which exception is taken. The language of the section relied upon is as follows: "Every written instrument purporting to have been signed or executed by any person shall be proof that it was so signed or executed, until the person * * * shall deny the signature or execution of the same, by his oath or affidavit." P. P. Mast & Co. v. Matthews, 30 Minn. 441. "A general denial alone, however, does put in issue the execution of the instrument; but the burden is upon the defendant to establish the fact that he did not execute the instrument." McCormick Harvesting Machine Co. v. Doucette, 61 Minn. 40. "The failure of the defendant to meet [plaintiff's prima facie proof] by denial of her signature or execution of the note, or other competent evidence, justified

the trial court in directing a verdict in behalf of plaintiff." Moore v. Holmes, 68 Minn. 108. The only effect of defendant's failure to comply with the statute was to cast upon him the burden of the issue as to the execution and delivery. Porter v. Winona & Dakota Grain Co., 78 Minn. 210. The statute applies to an instrument executed by a corporation. La Plant v. Pratt-Ford Greenhouse Co., 102 Minn. 93.

Upon the authority of the obiter dictum in Tucker v. Helgren, 102 Minn. 382, and upon the case of Nielson v. Schuckman, 53 Wis. 638, cited by this court, counsel for appellant now argue that this court intended by the decision in Tucker v. Helgren to change entirely the doctrine so often previously announced, and which had, in the case of La Plant v. Pratt-Ford Greenhouse Co., been so recently approved. The doctrine which has always been relied upon in the state, may be stated as follows: In an action founded upon an unacknowledged written instrument, the plaintiff by virtue of the provisions of section 4730, R. L. 1905, establishes prima facie a cause of action against the defendant by introducing in evidence the instrument apparently properly signed by defendant; the burden thereupon becomes shifted to the defendant to prove the nonexecution or nondelivery of the instrument.

If a ruling is correct for any reason, it is wholly immaterial that the court assigned a wrong reason for it. Error in a charge or ruling of a trial court is not a ground for reversal, if without prejudice. If, therefore, the burden of proof was, as stated by the trial court, it is wholly immaterial that the court assigned a wrong reason (Section 4730, R. L. 1905) for it; and the error, if any, was error without prejudice.

O'BRIEN, J.

One W. L. Gardner had for some time carried an accident policy in the Casualty Company of America, of which the Fletcher Company was the agent at Minneapolis. Gardner's policy expired June 30, 1908, and about the fifteenth of that month the Fletcher Company, which had ceased to be the agent of the Casualty Company, and had become the agent of the defendant United Surety Company, ten-

dered to Gardner a policy of the defendant, which it requested him to accept in place of the one issued by the Casualty Company. With the statement that he would examine it, look over the contract, and let the agent know later, Gardner received the policy, and after his death, which occurred August 24, 1908, it was found with other papers in his safe.

Mr. Lee H. Fletcher, the president of the Fletcher Company, testified that the policy was taken to Gardner by Mr. Knoff, a bookkeeper employed by the Fletcher Company. Knoff testified to handing the policy to Mr. Gardner as above stated; that he next called upon Gardner about the middle of July, and asked him for a check for the premium; that Gardner replied that he would not pay the premium in cash, but wanted the Fletcher Company, or Mr. Fletcher, to trade out the amount of the premium. Knoff replied that he had no authority to make such an agreement, but would report to Mr. Fletcher. He again saw Gardner about three weeks later, and told him that Mr. Fletcher would not take the premium in trade, whereupon Gardner replied that Mr. Fletcher would have to trade out most of it. He again told Gardner that he had no authority to agree to the proposition, whereupon Gardner handed him a bill-head, showing him what business he was in, and suggested that probably Mr. Fletcher could find something on there for him to do and trade out the premium in that way.

Nothing further occurred until after Gardner's death, when the premium was tendered and refused. The policy purported upon its face to insure W. L. Gardner for twelve months "on account of accident, as hereinafter described, from the thirtieth day of June, 1908, at twelve o'clock noon, standard time. * * * If the assured shall, during the term of this insurance, sustain bodily injuries effected solely through external, violent, and accidental means, suicide (sane or insane) not included, which injuries shall, directly and independently of all other causes, result in loss of life, limb, sight, or time as herein defined, the company will pay the amount below specified"—the minimum sum in case of death being $5,000.

On August 23, 1908, Gardner, while in a stable, was kicked by a horse. His thigh was cut, and the evidence indicates he was thrown,

and struck his head against some part of the barn.   After the acci-
dent Gardner appeared to be in great distress, and a physician was
summoned, who, after dressing the wound, suggested, as stables were
fruitful breeding places of tetanus germs, it might be well to ad-
minister an injection of anti-tetanus serum, although expressing the
opinion that there was not one chance in a million that tetanus would
ensue.   Gardner consented, and towards the evening of the following
day the physician injected the serum.   Immediately afterwards Gard-
ner was seized with a fit of sneezing, and died within a few minutes.
A post mortem examination disclosed that his lungs and bronchial
tubes had been completely filled through regurgitation.

Plaintiff claims that his death was due to suffocation.   The post
mortem also disclosed some injury to the head, which it was claimed
was severe enough to have produced concussion of the brain.   The
plaintiff, the beneficiary named in the policy, introduced evidence
tending to support her claim that the injury received by Gardner
was sufficient to cause a shock, impairing his nervous system to such
an extent that the regurgitation of the contents of his stomach en-
sued, causing his death by suffocation, and, further, that the injection
of the serum was the proper treatment indicated after the accident,
and, even if such treatment caused the filling of the lungs, his death
was still by suffocation, of which the accident was the proximate
cause; again, that death from suffocation, unless deliberately de-
signed, is necessarily an accident insured against by the policy.

The defendant claims that the policy was never delivered or ac-
cepted; that death resulted solely from the injection of the serum,
which treatment was not necessarily indicated by the injury which
Gardner received, but was at most because of a possible infection of
the wound which the attending physician deemed it prudent to guard
against; that such treatment was improperly administered to the
insured, who was afflicted with hay fever, and the injection of the
serum was the proximate cause of the death, and was not external,
violent, or accidental within the meaning of the policy.

The learned district judge instructed the jury in effect that, the
plaintiff having produced the policy, purporting to have been exe-
cuted by the defendant, and its execution not being specifically denied

in the answer, the burden of proof was, under the statute, upon the defendant to establish that the policy had not been executed and delivered. The court continued: "And if upon this issue the evidence is evenly balanced between the parties, or if it preponderates in favor of the plaintiff, you will find thereon for the plaintiff, and will otherwise find thereon for the defendant." And further: "If the administration of the serum was rendered necessary and proper by the accidental injuries which the deceased received, and if the accident and the serum, and they alone, caused the death, then the accident and the resulting death were such as the defendant insured against."

The plaintiff had a verdict, and from the denial of an alternative motion for judgment notwithstanding the verdict or a new trial of the action the defendant appeals.

1. It is undisputed that the policy in question was properly signed by the defendant and tendered to the insured. It was found in his safe with his other papers, and there can be no question that those facts established prima facie the execution and delivery of the policy. La Plant v. Pratt-Ford Greenhouse Co., 102 Minn. 93, 112 N. W. 889; Amos-Richia v. N. W. Mutual Life Ins. Co. (C. C.) 152 Fed. 192; Coffin v. N. Y. Life Ins. Co., 127 Fed. 555, 62 C. C. A. 415. The defendant contends that the court erred in instructing the jury that under such circumstances the statute placed upon the defendant the burden of proving that the policy contract was never fully executed by a valid delivery and acceptance of it.

It is unnecessary to enter upon a discussion as to when or under what circumstances during the trial of an action the burden of proof shifts from one party to the other, or whether that is a proper method for describing the situation of the parties at any particular period during the course of the trial. The practical situation was this: A duly signed policy issued by the defendant was after the death of the insured found amongst his papers. This, together with the admitted facts of its genuineness, established a prima facie presumption that it was in full force and effect; and unless the defendant by sufficient evidence overcame that presumption the jury were justi-

fied in finding the policy to be a valid obligation of the defendant. Jones v. New York, 168 Mass. 245, 47 N. E. 92.

Without going further, we would at least hold there was no prejudicial error in this portion of the charge. But we are inclined to believe that the evidence, taken all together, would have justified an instruction requiring the jury to find the policy to have been in effect at the time of the insured's death. He had retained it from about the middle of June until the twenty-fourth of August. The discussions between the insured and Knoff seem to have assumed the acceptance of the policy, the only dispute being as to whether the premium was to be paid in cash or in trade; and from the testimony of Mr. Fletcher it seems the former policy was allowed to expire. There can be little question that, had Gardner lived and had the defendant brought suit to recover the premium, it could have recovered at least the portion earned to August 24, 1908. MacDonell v. Keller Mnfg. Co., 90 Minn. 321, 323, 96 N. W. 785. The fact that the premium was not paid would not of itself keep the policy from becoming effective. Jones v. New York, supra.

2. The jury was instructed that if the administration of the serum was rendered necessary and proper by the accidental injuries which the insured received, and if the accident and the serum, and they alone, caused his death, then the insured's death was within the terms of the policy. In view of this instruction we cannot agree with plaintiff's contention that, if the evidence would have sustained a finding that the filling of the lungs resulted from the nervous shock which the deceased received when struck, the verdict should be sustained; for the language of the instruction was clearly to the effect that, if the treatment was proper and death resulted from it, the plaintiff could recover. Nor do we agree with plaintiff's contention that death from suffocation is in every case, except where such result is intended, to be regarded as produced by external, violent, and accidental means. We think this appeal must be determined by considering whether the injuries received by the deceased on August 23 were the proximate cause of his death upon the following day; that is, was the administration of the serum an independent and supervening cause of death, or is it to be considered one of the possibilities

within the contemplation of the parties at the time the contract was entered into?

Accident policies are intended to cover a well-defined area. To clearly define its liability, the defendant by this policy promised indemnity for injuries received through "external, violent, and accidental means." It would have been almost impossible to enumerate the consequences which might result from an accident, but it was comparatively easy to describe the character of the accident against the results of which the policy holder is indemnified. The language of the policy does this, and when an insured is injured by "external, violent, and accidental means" the indemnity promised is for every injury which results therefrom. The parties contemplated that the individual injured would act as an ordinary normal person, and that a physician would be called, whose judgment would be relied upon for the treatment to be administered; and where, as in this case, a reputable member of the medical profession was called, and his treatment was regular, ordinary, and in accordance with the teachings of his profession, there can, it seems to us, be no escape from the conclusion that the treatment administered was a natural and anticipated result of such injury, and that, although death might not have resulted, had no injection of serum been made, the original injury, confessedly received under conditions within the terms of the policy contract, must be held to be the proximate cause of death. The reasoning of this court in White v. Standard Life & Accident Ins. Co., 95 Minn. 77, 103 N. W. 735, 884, sustains this view although the facts in that case were entirely different from those in the case at bar.

The evidence did not conclusively show that, even if the insured was afflicted with the disease known as "hay fever," the injection of the serum would be fatal; and it follows that the court properly instructed the jury that the plaintiff was entitled to recover if the treatment given was rendered necessary and proper by the injuries, and that death resulted solely from the injuries and the injection of the serum.

Order affirmed.