## STATE EX REL. ADRIATIC MINING COMPANY v. DISTRICT COURT OF ST. LOUIS COUNTY AND ANOTHER.[1]

July 13, 1917.

Nos. 20,347—(181).

**Workmen's Compensation Act — injury within the course of employment.**

1. A workman received an injury to his eye, caused by a flying particle of iron ore; the particle of ore was removed from the eye by a fellow workman by means of a match and a handkerchief, which handkerchief had been in use for several days; the eye was then washed with water from a trough used in common by numerous other miners; gonorrheal infection soon set in causing the total loss of the sight of the eye; the workman was not afflicted with the disease. It is *held* that the injury so received was accidental, within the meaning of the Workmen's Compensation Statute, and that the findings of the trial court are sustained by the evidence.

**Workmen's Compensation Act — award — certiorari — findings.**

2. *In certiorari* to review an award of compensation under the Workmen's Compensation Act, the findings of the trial court will not be disturbed, unless manifestly against the clear preponderance of the evidence.

Upon the relation of the Adriatic Mining Company the supreme court granted its writ of *certiorari* to review the action of the district court for St. Louis county, Hughes, J., in proceedings under the Workmen's Compensation Act brought by Mike Chupich as employee against relator as employer to obtain compensation for injury to the employee. Affirmed.

*Washburn, Bailey & Mitchell,* for relator.

*Victor L. Power* and *Victor H. Johnson,* for respondents.

BROWN, C. J.

*Certiorari* to review the judgment of the court below awarding compensation to an injured employee in proceedings under the Workmen's Compensation Act.

[1] Reported in 163 N. W. .755.

The facts as disclosed by the findings of the trial court are substantially as follows: Relator owns and operates an iron mine at or near Biwabic, St. Louis county, this state, and at the time here in question, March 4, 1915, the workman to whom compensation was awarded was in its employ as a miner in and about the mine. While engaged in the discharge of his duties, and in breaking up a large chunk of iron ore with a hammer, a particle of the ore flew into his left eye, cutting through the cornea thereof, imbedding itself in the eyeball. A fellow workman removed the particle from the eye at the time, using in his efforts in that respect a match and handkerchief. The eye was immediately thereafter washed in water from a trough which was used daily by other miners for the purpose of washing their hands and faces. When the particle had been removed from the eye, blood and watery matter was discharged from the wound, the eye became inflamed, and thereafter a gonorrheal infection set in and resulted finally in the loss of the sight of the eye. Prior to the injury the eye was normal, and the workman experienced no trouble or pain therefrom. The court found that the "said gonorrheal infection was introduced into the said eye, * * * either at the time the said particle of ore was being removed, * * * or while said eye was being washed by [the] employee, or the same resulted from latent gonococci germs in said eye, which by reason of the injury to said eye, * * * caused the subsequent inflammation, and ulcer and resulting scar tissue." The court further found that the injury arose out of and in the course of the employment, and other necessary facts, and ordered judgment for the compensation provided for by the statute in such cases.

The only question presented by the assignments of error, is whether the findings of the trial court are sustained by the evidence. We answer the question in the affirmative.

The evidence is clear that the workman received some sort of an injury to his eye, in the manner stated by him, the precise character of which is in dispute. There is no dispute, however, about the fact that gonorrheal infection set in soon after the time of the injury, and thereafter progressed to such an extent that the sight of the eye was totally destroyed. And there can be no serious doubt that the facts, as claimed by the workman, disclose an accidental injury within the meaning of the compensation statute. And this, whether the gonorrheal infection resulted from

the use of a soiled handkerchief in removing the particle from the eye, or from washing the eye with water from the trough which was used indiscriminately by the miners, or from a latent germ within the eye, set in motion and made active by the violence of the injury to the eyeball. Miller v. St. Paul City Ry. Co. 66 Minn. 192, 68 N. W. 862; Gardner v. United Surety Co. 110 Minn. 291, 125 N. W. 264, 26 L.R.A.(N.S.) 1004; Dunnell, Minn. Dig. Supp. 1916, § 4871a; Cline v. Studebaker Corp. 189 Mich. 514, 155 N. W. 519, L.R.A. 1916C, 1139; Sullivan v. Modern Brotherhood, 167 Mich. 524, 133 N. W. 486, 42 L.R.A.(N.S.) 140, Ann. Cas. 1913A, 1116, and authorities there cited.

In disposing of the question, in proceedings of this kind, whether the findings of the trial court are sustained by the evidence, we apply the rule applicable generally to civil actions, to the effect that the findings of a trial court will not be disturbed unless manifestly against the clear preponderance of the evidence. Our examination of the record will not justify that conclusion and we therefore sustain the findings of the trial court.

It is contended by relator with some earnestness that the weight of the testimony conclusively shows that there was in fact no injury to the workman's eye of a character to permit extraneous infection of that organ in the manner claimed by him or otherwise; and, further, that at the time of the alleged injury there was present in the eye an active gonorrheal infection, not latent, but alive and in motion, which ultimately destroyed the eye, a condition for which the injury, whatever it may have been, was in no way responsible. We do not concur in the contention that the evidence is conclusive upon the point, though there is some evidence tending to establish the same. But taken as a whole the evidence resolved the question into one of fact. In this connection much stress is laid upon the testimony of one of the medical experts who treated the eye about two hours after the injury, and who testified that there was then a pus discharge which could not have formed from an infection occurring only two hours before. The premise may be conceded, for it seems entirely impossible that a pus formation could appear in so short a time. But the doctor may have been mistaken as to the character of the discharge. He testified that he did not examine it carefully, and this together with other testimony tending to show that there was a discharge from the

wound, of a bloody and watery character, leads us to the conclusion that the trial court properly solved the point on the theory that the character of the pus discovered by the doctor was not clearly shown to be such as might come from a gonorrheal ulcer. It was further shown, and in this respect there was no dispute, that the workman was not at the time afflicted with the disease. Nor was there any showing that he had been so afflicted at any prior time.

In this view of the evidence the cause of the infection is not left to conjecture or speculation, any further than a doubt as to which of three possible causes was responsible therefor, namely, the removal of the particle from the eye with the match and handkerchief, or bathing the eye in the common water trough, or the theory of a latent *gonococcus* germ.

The latter may be rejected as improbable. But as to the other hypotheses the evidence made the question one of fact.

This disposes of the case and covers all that need be said. A further discussion of the evidence would serve no useful purpose. It is sufficient to say that we have examined it with care with the result stated.

Judgment affirmed.