MAT K. AND NETTIE M. STROMMEN v. PRUDENTIAL
INSURANCE COMPANY OF AMERICA.[1]

December 2, 1932.

Nos. 28,978, 28,979.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *George
W. Jansen,* for appellant.

*Linus J. Hammond,* for respondents.

[1]Reported in 245 N. W. 632.

HILTON, J.

The two actions, tried together, were for the recovery on two $1,000 insurance policies issued by defendant on the life of Raymond Strommen, a son of plaintiffs, who were named in the policies as beneficiaries. Each policy provided for double indemnity if death occurred as a result of bodily injuries effected solely through external, violent, and accidental means, as specified therein. The insured died. The single indemnity was paid. Payment of the accident indemnity was refused, and these suits brought. Plaintiffs had a verdict for the full amount claimed. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. From that order this appeal was taken.

■ Deceased, 16 years and seven months of age, resided with his parents (respondents) and was employed by Sears-Roebuck & Company in the city of Minneapolis. Prior to Sunday, April 14, 1929, the insured was in good health. On that day a small, red, pimple on his left cheek about in alignment with the upper lip was apparent; it was also in a somewhat aggravated condition the next morning. That morning he went to the medical department of his employer. The nurse therein, Helen E. Calkin, treated the pimple, expressing a little pus, and directed the insured to come back the next morning to see the doctor. He did so, and the pimple was again treated and more pus expressed. The employer's medical report of the treatments was:

"1929-4-15 9 AM. Employe gives history of small pimple on cheek (left) that he opened at home. He reported to hospital today. Pus expressed from infection on face. Merc. and dressing applied. Employe felt faint. R. T. W.

HEC

"4-16  10-30  Pus expressed from infection on face. Merc. dressing.

DDA

"Employe very faint, complained of pain around heart. Was taken to Rest Room, ice cap placed over heart. Spts of ammonia dr. 1 in glass of water given. Heart exam. by Dr. D. D. Anderson

no pathology found. In about an hour complained of feeling worse. About noon sent home in cab.

HEC"

The initials "DDA" refer to Dr. D. D. Anderson, whom employer had secured to care for any injuries to its employes. The initials "HEC" refer to the nurse, Helen E. Calkin.

On Tuesday afternoon, April 16, the insured was ailing at home, and that night was very restless and had a rapid pulse. The mother of the insured, upon looking under the bandage placed by the nurse on the cheek, saw a red sore nearly as big as a pea, with a hole in it. On the 17th insured was progressively worse, and on that evening plaintiffs called Dr. Zaworski, their family doctor, who made an examination and found the left side of the face and neck swollen. The next morning, Thursday, the doctor found the patient considerably worse. Thursday noon the employer sent a doctor to the home to examine and prescribe for the insured. At his direction hot applications were placed on insured's face and neck. Thursday evening Dr. Anderson came, examined insured, and ordered him taken to St. Mary's Hospital, where he was at once examined by Dr. Goldman, the hospital physician, who found the insured in a very serious condition, the face and lips swollen— cyanotic—a bluish discoloration; a lesion on the upper lip—an open sore—at the angle of the mouth; lips and cheek were quite swollen, and it was difficult for insured to open his mouth; under the left jaw there was considerable swelling and hardness; the left side of the neck was very hard and tender; temperature at least 102, pulse 100, and respiration about 20. The temperature in the case indicated some infective process going on.

Dr. Goldman testified that to treat the boy properly it was necessary to have the history of the case. He was allowed to testify that for the purpose of such treatment the insured told him that on April 15 he (insured) had a boil squeezed—pimple—which was situated on the left angle of the mouth on the upper lip; that on April 16 the nurse did the same thing; and that on the next day

he felt worse. These statements of the insured to Dr. Goldman were admitted in evidence over the objections of defendant.

Dr. Goldman made a test and found that the insured's blood contained a profuse growth of staphylococcus germs. This germ comes from the outside and usually produces pimples. He further testified that these germs when in the blood multiply and produce certain waste products which produce symptoms of chills and fever, destroy and weaken the organs of the body, and increase the work of the heart to such an extent that the heart finally gives way, as it did here, the disease in the blood working the heart to such an extent that it stops. The doctor made an inch and a half incision in the angle of the left jaw for drawing out pus, but little was found. The insured died on April 23.

Dr. Goldman testified that the cause of death was blood poison, or septicemia, and pneumonia, and that the septicemia or blood poison so decreased insured's resistance that the pneumonia germs which are always present in the respiratory tract became active; that the primary cause of death was the bacteria in the blood stream. He further testified that in his opinion the blood infection came from the squeezing of the pimple on the face; that nature throws a delicate protective wall around a localized infection, such as a pimple, to keep the infection from getting into the system, and that when pressure is applied to such a pimple the wall may rupture and some of the pus or infection break through and go into the tissues; and that, in his opinion, is what happened.

Dr. Zaworski also testified much to the same effect. He stated that in his opinion death was caused by septicemia resulting from the squeezing of the pimple and the cellulitis of the neck, and a secondary following of pneumonia; that the pneumonia was brought about by the weakened condition of the body due to the infection, his body resistance being so low that he could not withstand anything and that pneumonia set in.

The expert medical witnesses on behalf of the respective parties were, as is usually the case, somewhat in disagreement. It was for the jury to determine which to believe. It believed that of the plaintiffs' experts, as it had a right to.

Eldor Strommen, a brother of the insured, testified that on April 16 he was in the medical department of the employer and there observed the nurse, with gauze in one hand, pressing on insured's left cheek with her hands. The nurse in her deposition denied that she did so on April 16, but admitted that on the 15th she washed the pimple with antiseptic gauze and at that time a slight amount of pus came from the pimple and that she put on mercurochrome dressing and covered it with sterile gauze.

The provisions of the policies which are here important are:

"The amount of Accidental Death Benefit * * * shall be payable in addition to the Face Amount of Insurance immediately upon receipt of due proof that the death of the Insured occurred * * *, as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, of which, * * * there is a visible contusion or wound on the exterior of the body, * * * provided, however, that no Accidental Death Benefit shall be payable if the death of the Insured resulted * * * directly or indirectly from bodily or mental infirmity or disease in any form."

The complaint contained all the necessary allegations to warrant a recovery. Defendant claims that the allegations relative to the cause of death under the above quoted provisions of the policy were not proved. The burden of proof in that regard was on plaintiffs. We think they amply sustained it. The evidence warranted the conclusion that the pressure on the pimple, for the purpose of expressing the pus, was external; it was violent, when the delicacy of the subject of the pressure is considered. In the accomplishment of that purpose the inner protective wall around the infected area was broken through, thus allowing the pus to get into the system. The result was accidental in its unforeseen and unintended consequences. There was a bodily injury.

The claim that insured's death resulted from an existing infirmity is not sound under the evidence. True, he had a pimple, in which, inclosed in a sac, were the staphylococcus germs. As long as those germs remained in the sac and did not enter the blood stream they

were not dangerous; driven from the sac into the blood system they proved fatal. Pimples are common and almost always inconsequential and harmless. Had it not been for the rupturing of the sac by pressure placed upon the pimple the condition that resulted in insured's death would not have arisen. "Infirmity," as referred to in the policy, "is construed to relate to an ailment or disease of a settled character." Taylor v. New York L. Ins. Co. 176 Minn. 171, 174, 222 N. W. 912, 913, 60 A. L. R. 959.

The jury was warranted in concluding from the evidence that all the essential conditions requisite for plaintiffs' recovery existed. See generally White v. Standard L. & A. Ins. Co. 95 Minn. 77, 103 N. W. 735, 884, 5 Ann. Cas. 83; Gardner v. United Surety Co. 110 Minn. 291, 125 N. W. 264, 26 L.R.A.(N.S.) 1004; Ludwig v. Preferred Acc. Ins. Co. 113 Minn. 510, 130 N. W. 5; Ashelby v. Travelers Ins. Co. 131 Minn. 144, 154 N. W. 946; Frommelt v. Travelers Ins. Co. 150 Minn. 66, 184 N. W. 565; Thorne v. Aetna L. Ins. Co. 155 Minn. 271, 193 N. W. 463; Clay v. New York L. Ins. Co. 183 Minn. 275, 236 N. W. 305; Milliren v. Federal L. Ins. Co. 185 Minn. 614, 242 N. W. 290; Taylor v. New York L. Ins. Co. 176 Minn. 171, 222 N. W. 912, 60 A. L. R. 959; Western C. T. Assn. v. Smith (C. C. A.) 85 F. 401, 40 L. R. A. 653.

The only questions remaining are whether the errors assigned relative to the charge of the court and to rulings on admission of evidence require the granting of a new trial.

As hereinbefore stated, the attending hospital physician, Dr. Goldman, was permitted over objection to testify among other things that the insured told him that the pimple had been squeezed. The objection was on the ground that it was incompetent, irrelevant, immaterial, hearsay, no foundation laid, not the best evidence, and self-serving. Appellant insists that it was error to admit that testimony and cites Sund v. C. R. I. & P. Ry. Co. 164 Minn. 24, 26, 204 N. W. 628, in which it is stated relative to such statements:

"First, they must have been made to a medical attendant for the purpose of medical treatment. Second, they must relate to existing pain or other symptoms from which the patient is suffering at the

time, *and must not relate to past transactions or symptoms, however closely related to the present sickness.* Third, such statements are only admissible when the medical attendant is called upon to give an expert opinion based in part upon them." (Italics ours.)

Here the statement was made to a medical attendant for the purpose of medical treatment, but it comes within the scope of the italicized portion of the above quotation and should not have been admitted.

"The rule is well settled that it is competent for a physician to testify as to the present physical condition of his patient, and what he said as to such condition, particularly as to ills, pains, and symptoms arising from an accident or sickness; but anything in the nature of past events, such as the cause of the injury or sickness, must be excluded, and is inadmissible in an action for the injury." Weber v. St. Paul City Ry. Co. 67 Minn. 155, 160, 69 N. W. 716, 718; Williams v. G. N. Ry. Co. 68 Minn. 55, 70 N. W. 860, 37 L. R. A. 199; 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 3292.

It is to be noted, however, that legal evidence independent of that received over objection was already in the case. Without objection the witness Eldor Strommen had testified (as hereinbefore referred to) that pressure had been made upon the pimple. The record of the employer's medical department showed that pus was expressed, as does also the testimony of the nurse and of Dr. Anderson. ("Express" means to force out by pressure; to press or squeeze out, as the juice of a fruit; to empty by pressure or squeezing. Webster's New International Dictionary.) Further, two witnesses, the father and the mother of the deceased, testified that Dr. Anderson, the employer's physician, told them on the evening of April 18 that the nurse had "squeezed the boil and got the root"; that they should not worry, that he (Raymond) would be all right. Dr. Anderson was asked whether he made any such statement. He did not deny having done so, but stated that he did not have any recollection of it. A new trial should not be granted because of the erroneous admission of evidence objected to when such error

was not actually prejudicial. Gibbon F. Elev. Co. v. Herschmann, 160 Minn. 326, 200 N. W. 293. A new trial should not be granted for error in the admission of evidence if the other evidence is clearly sufficient to justify the verdict and there was a fair trial, with no prejudice to the substantial rights of the adverse party. 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7180. See 46 C. J. § 73, p. 114. Defendant was in no way prejudiced.

Complaint is made of a statement by the court during a discussion had by defendant's counsel with the court about the law of the case. Some argument ensued which resulted in the statement made. No objection was made to it at the time; as a matter of fact, the statement of the court was probably correct. Whether it was or not is by no means, under the circumstances, reversible error.

We have carefully examined all the assignments of error and given due consideration to the argument of counsel, both oral and written, and find no ground for reversal. The case was ably tried on both sides, and the charge was probably more favorable to defendant than was necessary. The evidence amply sustained the verdict.

Order affirmed.

STONE, J. (dissenting).

I cannot agree that the verdict is sustained "amply" or at all. To me it seems to rest wholly upon speculation.