DONALD L. MORRISON'S CASE.

Hampden.  May 6, 1955. — June 7, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Workmen's Compensation Act*, Injuries to which act applies; Procedure:
notice. *Proximate Cause.*

Evidence in a workmen's compensation case that the employee, while at
work one very hot afternoon when his hands were dirty from handling
empty drums which had contained cement or other chemicals, momen-
tarily stopped to wipe the perspiration from his face, that he im-
mediately felt a burning sensation in his left eye, and that shortly
thereafter an infection developed in it resulting in its removal, to-
gether with medical testimony of eye specialists, warranted findings
that the origin of the infection was something which got into his eye
from outside at the time of such incident rather than something within
his body, and that he sustained an injury arising out of and in the
course of his employment. [660–661]
In a workmen's compensation case evidence warranted findings that
through the employee's foreman and a nurse at the employer's hospital
the employer, a self insurer, had immediate knowledge of an occurrence
during the employee's work resulting in an infection of his eye and its
ultimate removal, and that the self insurer, which received a medical
report of the matter after the removal of the eye, was not prejudiced
by want of a statutory notice of injury. [661–662]

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the workmen's compensa-
tion act.

The case was heard by *O'Brien*, J.

*Thomas L. Goggin*, for the self insurer.

*Henry A. Moran, Jr.*, for the claimant.

RONAN, J.  This is an appeal by the self insurer from a

final decree awarding workmen's compensation to the employee.

The evidence before the single member may be briefly summarized. The claimant, an employee of the United States Rubber Company for many years, was engaged on the afternoon of July 10, 1952, in transporting several empty drums which had contained cement or other chemicals. The handling of these drums was not considered a clean job and he had been furnished with gloves. That afternoon was very hot and he was perspiring. His hands were dirty. He wiped his face as best he could with some rags he had on the truck, and right after that he felt a burning sensation in his left eye. When he got home the eye gave him some pain and he applied boric acid to it. The next morning he consulted Dr. Shea, an eye specialist, who treated the eye which afforded him some relief. He saw Dr. Shea the following morning. His eye was swollen. The doctor gave him some medication. He saw the nurse at the plant clinic. She made an appointment for him with Dr. Ryan, another eye specialist. The latter examined and treated the eye that afternoon. After the employee returned home, he telephoned to Dr. Ryan that his eye was paining him and Dr. Ryan told him that he was making arrangements to have him enter a hospital. The employee went to a hospital on July 13, 1952, where after an unsuccessful attempt to control the infection the eye was removed on July 26, 1952. The first expert who saw him on July 11, 1952, testified that he had an infected ulcer and was suffering from a very acute reaction which had started within a few days. In his opinion the infection entered from the outside although the condition of the eye prevented him from determining whether there had been an abrasion. It was not absolutely necessary to have an abrasion for this type of infection. The second expert testified that the condition of the eye when he first saw it on July 12, 1952, was hopeless. The employee had a corneal ulcer with the infection extending into the anterior chamber. There was then no evidence of an abrasion as that would have been destroyed by the in-

fected ulcer. In his opinion, it was probable that the employee could get an infection of that type into his eye if he rubbed it when he was perspiring and had dirty hands, and that "he had some abrasion of the cornea to permit bacteria to enter into the cornea and cause the infection. The abrasion could be caused by a person passing the hand over the eye with a glove. The abrasion does not have to be of any definite depth. The covering at that part of the eye is about one millimeter in thickness." It could be found upon his further testimony that the germ reached the eye not through any unbroken covering of the eye but through an abrasion. The only other way the infection could have lodged in the eye was through the blood stream. In that event, the employee would have been very ill and there would also have been other evidence of the infection in the blood stream. There was no evidence of infection in the blood stream.

The single member found that the employee sustained an injury to his left eye on July 10 which arose out of and in the course of his employment and which resulted in the loss of the eye. He ordered the payment of compensation for five weeks and specific compensation in accordance with G. L. (Ter. Ed.) c. 152, § 36 (d), as appearing in St. 1949, c. 519, for the loss of the eye. The board of review adopted his findings, and the self insurer appealed from a final decree entered in the Superior Court following the decision of the board.

There was sufficient evidence to show the time and place of the injury. The board could find that the incident of July 10, 1952, was the cause of the loss of the employee's eye. The evidence was also sufficient to show that something had gotten into the eye from the outside and that the infection had not originated within his body. The injury occurred while he was engaged in the performance of his duties as a truckman although he had momentarily stopped to wipe off the perspiration from his face. *Bradford's Case,* 319 Mass. 621, 623. *Kubera's Case,* 320 Mass. 419, 421. *Zarba* v. *Lane,* 322 Mass. 132, 134. In *Bean's Case,* 227

Mass. 558, 560, where a gardener employed by a municipal park department in some manner while at work sustained a slight scratch on his hand and died within a few days of septicemia, it was said that, "Although there was no evidence to show in what manner he was injured, or what caused the scratch on his hand, there was evidence that the injury happened while he was at his work and it could have been found that it arose out of and in the course of his employment."

It was said in *Caswell's Case,* 305 Mass. 500, 502, that "An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." See also *Souza's Case,* 316 Mass. 332, 335; *McManus's Case,* 328 Mass. 171; *Egan's Case,* 331 Mass. 11.

Entrance of bacteria from an external source into the eye of an employee, while engaged in the performance of his duties, which causes an infection in the eye is a compensable injury. *Simmons National Bank* v. *Brown,* 210 Ark. 311. *Cline* v. *Studebaker Corp.* 189 Mich. 514. *State* v. *District Court of St. Louis County,* 137 Minn. 435. *Hiers* v. *John A. Hull & Co.* 178 App. Div. (N. Y.) 350. *McCauley* v. *Imperial Woolen Co.* 261 Pa. 312. *Brintons, Ltd.* v. *Turvey,* [1905] A. C. 230.

The single member found that notice was given in accordance with the provisions of the workmen's compensation act. That finding was adopted by the board. There was evidence that on July 11, 1952, the employee saw his foreman who made a memorandum of his conversation with the employee, and that the employee told him that he must have rubbed his eye with his glove and that something was in it, that "he must have rubbed his hand over the eye." The eye according to the foreman "was swollen and all mattered up." The foreman advised him to go to the factory hospital. He saw the nurse at the factory hospital on July 11, 1952, and she after talking with Dr. Shea administered eye drops to the employee. Dr. Shea at the request

of the self insurer furnished the latter with a report on August 12, 1952. It is difficult to see how there was any want of notice, and it is more difficult to see how the self insurer was prejudiced by the lack of notice or misled by the nature of the claim filed by the employee with the Industrial Accident Board.[1] *Rich's Case,* 301 Mass. 545, 549–550. *Duggan's Case,* 315 Mass. 355, 359. *Perrotta's Case,* 318 Mass. 737, 739. *Watson's Case,* 322 Mass. 581, 584. *Tassone's Case,* 330 Mass. 545, 548. *Charron's Case,* 331 Mass. 519.

Costs of this appeal under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, and as amended by St. 1949, c. 372, may be allowed by the single justice.

*Decree affirmed.*